BERNARD SPIEGEL AND MAXINE SPIEGEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3326–65.    Filed February 23, 1968.

*Leonard H. Weiner*, for the petitioners.
*Charles H. Powers*, for the respondent.

OPINION

Petitioners contend that they are entitled to an ordinary loss for the years 1959 and 1962 based upon the worthlessness, in 1962, of their stock in Bernie's Mens Shop, Inc. They argue that the corporation met the requirements of section 1244(c)(1)[2] and the regulations thereunder pertaining to the issuance of its stock under an adopted, written plan.[3] In the alternative, petitioners argue that the requirement of a written plan, as set forth in the regulations, is invalid. Respondent, on the other hand, contends that Bernie's Mens Shop, Inc., met neither the requirements of section 1244 nor the regulations promulgated under

[2] SEC. 1244. LOSSES ON SMALL BUSINESS STOCK.
　(c) SECTION 1244 STOCK DEFINED.—
　　(1) IN GENERAL.—For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if—
　　　(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,
　　　(B) at the time such plan was adopted, such corporation was a small business corporation,
　　　(C) at the time such plan was adopted, no portion of a prior offering was outstanding,
　　　(D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and
　　　(E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained (or if such corporation has not been in existence for 5 taxable years ending before such date, during the period of its taxable years ending before such date, or if such corporation has not been in existence for one taxable year ending before such date, during the period such corporation has been in existence before such date), derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this subparagraph only to the extent of gains therefrom); except that this subparagraph shall not apply with respect to any corporation if, for the period referred to, the amount of the deductions allowed by this chapter (other than by sections 172, 242, 243, 244, and 245) exceed the amount of gross income.
Such term does not include stock if issued (pursuant to the plan referred to in subparagraph (A)) after a subsequent offering of stock has been made by the corporation.
　[3] Sec. 1.1244(c)–1(c). *Written plan.* (1) The common stock must be issued pursuant to a written plan adoped by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when * * * the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. * * *

the authority of section 1244(e)[4] because the corporate records did not reflect the adoption of a resolution to issue section 1244 stock and no plan in writing, containing the requirements of section 1244, was ever proposed to the corporation.

Although we are indeed faced with a close question, we are inclined to agree with respondent for the reasons hereinafter stated.

Section 1244(c) provides that a corporation must adopt a plan meeting specified requirements before a loss on its stock can be treated as a loss from a sale of other than a capital asset. Section 1.1244(c)–1(c)(1), Income Tax Regs., provides that the common stock must be issued pursuant to a written plan adopted by the corporation. Despite petitioners' assertion to the contrary, it is plain that this regulation requiring the plan to be put in writing and adopted by the corporation is valid and reasonable. It was promulgated pursuant to the broad authority vested in the Commissioner by section 1244(e). That such was the intent of Congress is clearly reflected by the legislative history of that section since the House committee report states that "Such plan must be in writing."[5] Moreover, Treasury regulations constitute contemporaneous constructions of statutes by those charged with the administration thereof which should not be overruled except for weighty reasons, and must be sustained unless unreasonable and plainly inconsistent with the statutes. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496 (1948). The role of this Court in cases of this type begins and ends with assuring that the regulations fall within the authority to implement the congressional mandate in some reasonable manner. Certainly the requirements of the regulations are the epitome of simplicity and were promulgated because of an obvious need for a uniform method of applying section 1244. Because the regulation challenged here has not been shown deficient on that score, its validity must be sustained. See *Wesley H. Morgan*, 46 T.C. 878, 889 (1966).

Petitioners claim that, unlike the situations which existed in *Wesley H. Morgan, supra*, and *Sofie Eger*, T.C. Memo. 1966–192, there was a written plan prior to the alleged issuance of section 1244 stock by Bernie's Mens Shop, Inc. They rely upon a memorandum made by their accountant, Easton, which was kept in his file and reflected notes taken during the meeting at which Bernard purchased assets from Hessing. They also rely upon notes taken by their attorney, Bourgon, at the incorporators' meeting for his own personal use. We think these items, considered individually or collectively, do not constitute a "written plan" contemplated by the regulations. Easton's notes were

---

[4] SEC. 1244. LOSSES ON SMALL BUSINESS STOCK.

(e) REGULATIONS.—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section.

[5] H. Rept. No. 2198, 85th Cong., 2d Sess., p. 8 (1958), 1959–2 C.B. 709, 714.

made prior to the incorporators' meeting and stated that "Bernie *is to* incorporate on Feb. 27, '61 under a plan to qualify as Sec. 1244 stock— in accordance with our suggestion and advice." [6] Thus they contained no more than Easton's version of a possible written plan. Similarly, Bourgon's notes, standing alone, are sketchy and, except for his testimony, incomprehensible. While such notes were obviously written, we are unwilling to characterize them as a "written plan" within the meaning of section 1244 when their intelligibility and completeness depended, as they did, on subsequent explanatory testimony.

Even if we were to assume that the notes made by Easton and Bourgon constituted a "written plan" to issue section 1244 stock, the notes still were not intended to or actually served as a *written plan adopted by the corporation.* Easton was not present at the incorporators' meeting; there is no evidence that the plan reflected in his memorandum was ever proposed to the corporation; and it is doubtful that the other incorporators were even aware of its existence. The same thing may be said of Bourgon's notes. It is inconceivable that the incorporators either intended to or actually adopted any portion of them.[7] We believe it is crucial that there was no contemporaneous corporate record to establish that Bernie's Mens Shop adopted a plan to issue stock pursuant to section 1244.

Even if we treated the notes as a written plan adopted by the corporation, the written plan would still fail to meet the requirements of the statute and regulations. Section 1244(c)(1)(A) requires that the period of the offering be specified in the plan, and the regulations thereunder provide for the plan to be in writing. Easton's memorandum says that "Bernie is to incorporate * * * under a plan to qualify as Sec. 1244 stock" and that "there will be no future offering of stock for sale." The only explanation in the memorandum as to the phrase "no future offering" is that "Common stock only to be issued under the plan (1244)." In our opinion such a reference is insufficient as a means of specifying the period of the offering. See Rev. Rul. 66–67, 1966–1 C.B. 191. Likewise, the words *"No more"* in Bourgon's notes are insufficient as written proof that stock was to be offered only within a certain period since Bernie's Mens Shop, Inc., had 5,000 shares of authorized common stock and the petitioners were issued only 1,000 of these shares on March 1, 1961. It is quite possible that the words *"No more"* were totally unrelated to the question of limiting the amount or date of stock to be issued by Bernie's Mens Shop, Inc.

We conclude, on this record, that Bernie's Mens Shop, Inc., did not issue its stock pursuant to the terms of section 1244. Accordingly, the

---

[6] Emphasis added.

[7] We note that the petitioners do not contend that the revised minutes constitute a written plan adopted by the corporation within the provisions of the regulations. In any event, this Court held in *Sofie Eger,* T.C. Memo. 1966–192, that language similar to the statement contained in the revised minutes did not qualify as a plan under sec. 1244.

petitioners are not entitled to deduct the loss occasioned by the worth-lessness of their stock in Bernie's Mens Shop, Inc., as an ordinary loss in the year 1962 or to take a loss carryback for the year 1959. Such loss must be treated as a capital loss.

To reflect the stipulation of the parties as to petitioners' itemized deductions,

*Decision will be entered under Rule 50.*