Sofie EGER, Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 299, Docket 31260.

United States Court of Appeals
Second Circuit.

Argued Feb. 21, 1968.

Decided April 16, 1968.

Benjamin Tannenbaum, New York City, for petitioner.

Robert J. Campbell, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Dept. of Justice, on the brief), for respondent.

Before FRIENDLY and SMITH, Circuit Judges, and GIGNOUX, District Judge.*

J. JOSEPH SMITH, Circuit Judge:

This is a petition to review, pursuant to section 7482 of the Internal Revenue Code of 1954, a decision of the Tax Court, Theodore Tannenwald, Jr., Judge, T.C. Memo 1966–192, assessing income tax liabilities against the petitioner **

---

\* Of the District Court of Maine, sitting by designation.

\*\* Since the petitioner and her deceased husband filed joint returns, and acted to-

for the years 1958, 1959 and 1960. The Tax Court held that the taxpayer was not entitled in 1961 to a deduction from regular income for her loss on the sale or exchange of stock issued by Windmill Food Stores of Hewlett, Inc. (herein Hewlett) under section 1244 of the Code.[1] Since the deduction was held invalid, the net operating loss it was alleged to have created in 1961 could not be carried back

gether on all the relevant transactions, we have treated all transactions as if they were solely the petitioner's.

1. Internal Revenue Code of 1954:
SEC. 1244 [as added by Sec. 202, Small Business Tax Revision Act of 1958, P.L. 85–866, 72 Stat. 1606, 1676]. LOSSES ON SMALL BUSINESS STOCK.

(a) *General Rule.*—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset.

(b) *Maximum Amount for Any Taxable Year.*—For any taxable year the aggregate amount treated by the taxpayer by reason of this section as a loss from the sale or exchange of an asset which is not a capital asset shall not exceed—

(1) $25,000, or

(2) $50,000, in the case of a husband and wife filing a joint return for such year under section 6013.

(c) *Section 1244 Stock Defined.*—

(1) *In general.*—For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if—

(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,

(B) at the time such plan was adopted, such corporation was a small business corporation,

(C) at the time such plan was adopted, no portion of a prior offering was outstanding,

(D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and

(E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained (or if such corporation has not been in existence for 5 taxable years ending before such date, during the period of its taxable years ending before such date, or if such corporation has not been in existence for one taxable year ending before such date, during the period such corporation has been in existence before such date), derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this subparagraph only to the extent of gains therefrom) ; except that this subparagraph shall not apply with respect to any corporation if, for the period referred to, the amount of the deductions allowed by this chapter (other than by sections 172, 242, 243, 244, and 245) exceed the amount of gross income.

Such term does not include stock if issued (pursuant to the plan referred to in subparagraph (A)) after a subsequent offering of stock has been made by the corporation.

(2) *Small business corporation defined.*—For purposes of this section, a corporation shall be treated as a small business corporation if at the time of the adoption of the plan—

(A) the sum of—

(i) the aggregate amount which may be offered under the plan, plus

(ii) the aggregate amount of money and other property (taken into account in an amount, as of the time received by the corporation, equal to the adjusted basis to the corporation of such property for determining gain, reduced by any liabilities to which the property was subject or which were assumed by the corporation at such time) received by the corporation after June 30, 1958, for stock, as a contribution to capital, and as paid-in surplus

does not exceed $500,000; and

(B) the sum of—

(i) the aggregate amount which may be offered under the plan, plus

(ii) the equity capital of the corporation (determined on the date of the adoption of the plan),

does not exceed $1,000,000.

For purposes of subparagraph (B), the equity capital of a corporation is the sum of its money and other property (in an amount equal to the adjusted basis of such property for determining gain), less the amount of its indebted-

to the tax years in issue. We hold that the loss qualified as an ordinary loss under section 1244 and reverse and remand for determination of the Commissioner's alternative contentions.

In 1958, Hewlett was organized. Petitioner was the sole stockholder and paid $40,000 for her 40 shares pursuant to a corporate motion and resolution of March 31, 1959 [2] which provided that on April 6, 1959 the petitioner was to pay $40,000 for 40 shares of Hewlett issued pursuant to section 1244 of the Code. Early in 1961, Hewlett filed a petition in bankruptcy under Chapter XI of the Bankruptcy Act together with a plan of reorganization which was approved by the referee and confirmed. At that point the petitioner was owed $62,000 by Hewlett. Petitioner waived any right to

ness (other than indebtedness to shareholders).

(d) *Special Rules.*—

(1) *Limitations on amount of ordinary loss.*—

(A) *Contributions of property having basis in excess of value.*—If—

(i) section 1244 stock was issued in exchange for property,

(ii) the basis of such stock in the hands of the taxpayer is determined by reference to the basis in his hands of such property, and

(iii) the adjusted basis (for determining loss) of such property immediately before the exchange exceeded its fair market value at such time,

then in computing the amount of the loss on such stock for purposes of this section the basis of such stock shall be reduced by an amount equal to the excess described in clause (iii).

(B) *Increases in basis.*—In computing the amount of the loss on stock for purposes of this section, any increase in the basis of such stock (through contributions to the capital of the corporation, or otherwise) shall be treated as allocable to stock which is not section 1244 stock.

(2) *Recapitalizations, changes in name, etc.*—To the extent provided in regulations prescribed by the Secretary or his delegate, common stock in a corporation, the basis of which (in the hands of a taxpayer) is determined in whole or in part by reference to the basis in his hands of stock in such corporation which meets the requirements of subsection (c) (1) (other than subparagraph (E) thereof), or which is received in a reorganization described in section 368(a) (1) (F) in exchange for stock which meets such requirements, shall be treated as meeting such requirements. For purposes of paragraphs (1) (E) and (2) (A) or subsection (c), a successor corporation in a reorganization described in section 368(a) (1) (F) shall be treated as the same corporation as its predecessor.

(3) *Relationship to net operating loss deduction.*—For purposes of section 172 (relating to the net operating loss deduction), any amount of loss treated by reason of this section as a loss from the sale or exchange of an asset which is not a capital asset shall be treated as attributable to a trade or business of the taxpayer.

(4) *Individual defined.*—For purposes of this section, the term "individual" does not include a trust or estate.

(e) *Regulations.*—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section.

2. The Tax Court found

The minutes of the first meeting of the Board of Directors of Hewlett, held on March 31, 1959, were on a standard form with blank spaces designed to be filled with the missing details. They contained the following:

*The Secretary then presented to the meeting a written proposal from* Fred Eger and Sofie Eger *to this Corporation.*

*Upon motion duly made, seconded and carried, the said proposal was ordered filed with the Secretary, and he was requested to spread the same at length upon the minutes, said proposal being as follows:*

That Fred and Sofie Eger will purchase stock of the Windmill Food Stores of Hewlett, Inc. and that they will do so provided that the said common stock is issued pursuant to the terms and provisions of Section 1244 of the Internal Revenue Code.

Upon motion duly made and seconded and carried it was RESOLVED that the corporation accepts the offer and the conditions of the offer of Fred and Sofie Eger to purchase common stock of the corporation and that it be issued pursuant to Section 1244 of the Internal Revenue Code. [Emphasis added.]

The italicized portion was from the form and the non-italicized portion was typed in.

payment she might have under the plan. In March of 1961, petitioner entered into an agreement with Pick 'N Save, Inc., under which the latter agreed to buy and the petitioner agreed to sell her 40 shares in Hewlett. The purchase price was $100,000 plus the value of certain security deposits, other items, and the value of Hewlett's inventory on the date of closing less credits for certain secured liabilities. All payments on account of the purchase price were to be deposited in escrow for one year after the closing for the purpose of paying any claims of Hewlett's creditors for moneys due and owing at the day of closing. At closing, the petitioner was to deliver an executed release of all obligations due it from Hewlett. On April 13, the plan of arrangement was confirmed. The next day, Hewlett reaffirmed its obligations to the petitioner on its indebtedness to her, in a resolution which stated that the petitioner would accept as full payment of her claims any sum paid by Pick 'N Save left with the escrowee after the other creditors had been paid. On the same day, petitioner's sale of stock to Pick 'N Save was closed. After payment of Hewlett's other creditors, the escrowee had $30,000 left for payment to the petitioner.

Petitioner claims that the $30,000 was received as final payment on Hewlett's indebtedness to her, that her stock in Hewlett was worthless in 1961, and that she was therefore entitled to a regular loss under 1244 of the Code. The government contends that the stock in question was not 1244 stock so that all she was entitled to was a capital loss. Or, alternatively, if the stock is 1244 stock, the $30,000 received from Pick 'N Save was received for it, so that the regular loss available is only $10,000, and that an unresolved question of fact remains as to the year in which the $10,000 loss was incurred. The Tax Court held for the government, relying on a finding that the stock in question was not 1244 stock.

■■ The Tax Court's holding that the Hewlett stock was not 1244 stock was based upon a factual finding that the stock was not issued pursuant to a *written plan* as required by the Statute and Regulation 1.1244(c)–1(c). See Bruce v. United States, 68–1 USTC par. 9112 (S. D.Tex.1967); Morgan v. Commissioner, 46 T.C. 878, 888–890 (1966); Spillers v. Commissioner, 26 T.C.M. 1069, 1073–74 (1967); Warner v. Commissioner, 48 T.C. 49 (1967). We disagree. The corporate minutes are a sufficient writing under the circumstances here to meet the requirements of the statute.[3] The regulations were not adopted until a time subsequent to the stock issue here, and we cannot charge the taxpayer with knowledge of their provisions.

■ The purpose of 1244 was to encourage the formation of small business units found to be socially and economically desirable in spite of the high risk shown by the high percentage of failure of such units in their formative years, by granting favorable tax treatment to losses incurred by investors in the formation of the small business units. At least during the period prior to the adoption of regulations spelling out under the authorization in the statute to promulgate such regulations, the details required of the plan, we think that fidelity to the purpose of the statute calls for liberal application of its language. Here the very formation of the corporation and issue of its stock was expressed to be in conformity with and limited to the conditions required by section 1244, the amount and period of time actually involved were within the statutory limitations, and the contemplated loss occurred.

The Commissioner relies on the Tax Court decisions in Shapiro v. Commissioner, 25 T.C.M. 654 (1966); Morgan

3. Compare the sufficiency of corporate minutes to satisfy the written memorandum requirements of the Statute of Frauds, 2 Corbin Contracts, Sec. 508. Lamkin v. Baldwin & Lamkin Mfg. Co., 72 Conn. 57, 43 A. 593, 596, 1042, 44 L.R.A. 786 (1899); Preis v. Eversharp Inc., 154 F. Supp. 98 (E.D.N.Y.1957).

v. Commissioner, supra; Warner v. Commissioner, supra, and Spillers v. Commissioner, supra. These cases, even if correctly decided, are clearly distinguishable. In *Shapiro* there was apparently no proof that the stockholder-directors had 1244 in mind or knew of its requirements, nor was there any proof of the value of the property exchanged for the stock in order to establish its basis. *Morgan* involved two payments into the corporation, one of which failed to qualify because made before any plan was adopted or entered in the minutes, the second because made after the corporate purpose had failed, in order to complete corporate liquidation and hopefully salvage something by 1244 treatment of the deficit, not for the bona fide purchase of stock. In *Warner* there was no reference to sec. 1244 in the minutes and the plan for stock purchase contemplated periodic stock purchases (over an indefinite period of time which might well extend beyond two years) from a trust whose rate of purchase depended on trust receipts from a percentage of salary payments by and for employes of another corporation. In *Spillers* there was no reference to sec. 1244 in the corporate minutes concerning the purchase of stock, and a stock voting agreement of the same date contemplated possible future issues, uncertain in time and amount. In Bruce v. United States, supra, the first purchase was prior to the adoption of the minutes relied on, and in none of the resolutions was there any reference to sec. 1244 or its requisites except for one which, as in *Morgan*, was after dissolution had been determined on and was held not a bona fide purchase.

Subsequent to oral argument, the Commissioner has called our attention to the case of Spiegel v. Commissioner, 49 T.C. ——, filed February 23, 1968, denying deduction for lack of a written plan. However, there were in that case no corporate minutes referring to the adoption of a sec. 1244 plan, such as existed here, and even then Judge Dawson recognized that the court was "indeed faced with a close question."

The taxpayer complied with the terms and the spirit of the statute as it stood when the stock was issued. There was no attempt to delay election of the form the transaction should take, or create a hedge against the future. The purpose of the plan requirement, to give unequivocal evidence of the taxpayer's commitment to investment in the covered type of small business enterprise, is met here. She is entitled to the benefit of the deduction under the statute.

The decision is reversed and remanded to the Tax Court for further proceedings not inconsistent with this opinion.

