DANIEL FARR and JUDITH FARR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent DANIEL S. KING and ROSALIE KING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farr v. Commissioner
Docket Nos. 887-71, 898-71.
United States Tax Court
T.C. Memo 1973-283; 1973 Tax Ct. Memo LEXIS 2; 32 T.C.M. (CCH) 1366; T.C.M. (RIA) 73283; December 27, 1973, Filed. Abraham Zemlock, for the petitioners. Marion L. Westen, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners Daniel and Judith Farr's Federal income tax for their taxable year 1966 in the amount of $3,174. Respondent also determined a deficiency in petitioners Daniel and Rosalie King's Federal income tax for their taxable year 1966 in the amount of 2 $3,505.91. The issue for our determination is whether the common stock of King-Farr, Inc., was issued *3 pursuant to a plan which complies with section 1244, I.R.C., 1954, [1] and the regulations thereunder. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners Daniel Farr and Judith Farr are husband and wife and they resided at Purchase, New York at the time they filed their petition in this case. They filed a joint Federal income tax return for their taxable year 1966 with the district director of internal revenue, Manhattan District, New York, New York. Petitioners Daniel S. King and Rosalie King are husband and wife and they resided at Harrison, New York at the time they filed their petition in this case. They filed a joint Federal income tax return for their taxable year 1966 with the district director of internal revenue, Manhattan district, New York, New York. On June 14, 1965, petitioners Daniel M. Farr (Farr) and Daniel S. King (King) purchased the auxiliary ketch "Windsong" from William G. Anderson for $66,550. On 3 July 9, 1965, Farr and King received payment of $1,800 for John Alden for the latter's use of the "Windsong." On July 14, Farr and King *4 employed Abraham Zemlock, an attorney, to organize a corporation. King-Farr, Inc., was organized under the laws of the State of New York and its Articles of Incorporation, dated July 14, 1965, were filed in the Office of the New York Department of State on July 16, 1965. The Articles recited in part that "the aggregate number of shares which the corporation shall have the authority to issue is 200 shares, common stock, all of one class, and without par value." One of the stated corporate purposes of King-Farr, Inc., was "[to] design, build, construct, inspect, overhaul, repair, purchase, hire, or otherwise acquire, hold, own, use, sell, rent, license the use of, or otherwise deal in and dispose of all types of boats and water craft; to design, build, construct, buy, sell and generally deal in all types of engines, motors, and all other equipment necessary for the operation of boats and water craft." 4 The organization meeting of the incorporators of King-Farr, Inc., was held at 2:00 p.m. on July 19, 1965. In addition to electing Farr and King as directors of King-Farr, Inc., by-laws of the corporation were adopted. The by-laws, in part, stated as follows: ARTICLE V *5 - CERTIFICATES FOR SHARES 1. CERTIFICATES. The shares of the corporation shall be represented by certificates. They shall be numbered and entered in the books of the corporation as they are issued. They shall exhibit the holder's name and the number of shares and shall be signed by the president or a vice-president and the treasurer or the secretary and shall bear the corporate seal. * * * ARTICLE IX - FISCAL YEAR The fiscal year shall begin the first day of [left blank] in each year. A special meeting of the stockholders and directors of King-Farr, Inc., was held at 4:00 p.m. on July 19, 1965. The minutes of that meeting are as follows: 5 A special meeting of the stockholders and directors of King-Farr, Inc. was held at the office of the attorneys for the corporation, at 160 Broadway, New York, N.Y., on the 19th day of July, 1965, at 4:00 o'clock in the afternoon of said day. The meeting was called to order by Mr. Daniel Farr, who acted as Chairman. The following stockholders and directors, being all of the directors and stockholders of the corporation, were present: Daniel Farr - stockholder and director Daniel S. King - stockholder and director. *6 The Chairman informed the meeting that it was most important for the interest of the stockholders and the corporation that the corporation qualify as a "Section 1244 Corporation" by adopting a plan to offer its common stock to offerees interested in purchasing same within a period of two years. The stockholders could, in the event of liquidation, take the benefit of deducting the loss on their personal income tax returns. After discussions and deliberations, the final resolution was, on motion duly made, seconded and unanimously carried, and duly adopted: "Resolved, that the corporation offer its common stock to those interested in purchasing same and becoming stockholders in the corporation; that the offer to sell said stock terminates July 19, 1967; that it is the intention and purpose of this resolution to qualify this corporation as a "Section 1244 Corporation"". There being no further business before the meeting, the meeting was, on motion duly made, seconded and carried, adjourned. 6 On September 3, 1965, Zemlock wrote King and enclosed two stock certificates of King-Farr, Inc., each for 10 shares, each to be signed by Farr as president of King-Farr, Inc., and *7 each to be signed by King as secretary of King-Farr, Inc. King and Farr were each to retain one of the certificates. King acknowledged receipt of the shares by letter dated September 8, 1965. On September 20, 1965, a checking account was opened for King-Farr, Inc., at the National Bank of Westchester. King-Farr, Inc., filed its U.S. corporation income tax return for the fiscal year commencing July 1, 1965, and ending June 30, 1966. This return shows that the ketch "Windsong" was the only asset of the corporation at the beginning of its fiscal year. The capitalization of King-Farr, Inc., and the value of its sole asset are both stated to be the amount of $66,550. King-Farr, Inc., included in its corporate gross receipts as reported on its Federal income tax return the amount of $1,800 received from John Alden on July 9, 1965. King-Farr, Inc., reported a net corporate 7 loss of $15,360.96 on its income tax return for its fiscal year ended June 30, 1966. The corporation was dissolved pursuant to authorization of its shareholders in December 1966. Petitioners Daniel and Judith Farr reported an ordinary loss of $7,680 on their 1966 income tax return as a result of Farr's *8 loss resulting from the liquidation of King-Farr, Inc. Petitioners Daniel S. and Rosalie King reported an ordinary loss of $10,500 on their 1966 income tax return as a result of King's loss resulting from the liquidation of King-Farr, Inc. Both petitioners Farr and petitioners King claimed their loss to be a loss on section 1244 stock. Respondent in his notice of deficiency to each of the Farrs and the Kings disallowed the loss claimed on the King-Farr, Inc. stock and treated the loss as a long-term capital loss with the explanation in each notice that the amount "which you deducted as a loss on section 1244 stock is not allowable because the plan adopted by King-Farr, Inc. did not specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant to such plan" and for the "further reason that the stock was issued to you prior to the adoption of the plan." 8 Section 1244 provides, in general, that the shareholder who incurs losses in the sale or exchange of "section 1244 stock" may treat such loss as an ordinary loss rather than a capital loss. Respondent contends that the common stock of King-Farr, *9 Inc., was not "section 1244 stock" for two reasons: (1) the plan by which the King-Farr stock, which was purportedly "section 1244 stock," was to be issued does not comply with the requirements imposed by section 1244 and the regulations thereunder in that the plan adopted by the corporation did not specify in terms of dollars the amount to be received by the corporation for the stock, and (2) the stock on which petitioner Farr and petitioner King incurred their loss was issued to them prior to the adoption of any plan with respect to section 1244 stock, whether or not that plan qualifies as proper. Section 1244 stock is defined by section 1244(c), which provides, in part, as follows: (1) General. - For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, 9 (C) at the time such plan was adopted, no portion of a prior offering was outstanding, *10 (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), * * * Section 1244(e) provides that the Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of section 1244. Pursuant to such authority, the Secretary has promulgated section 1.1244(c)-1(c), Income Tax Regs., which states as follows: (c) Written plan. (1) The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock *11 to be issued pursuant thereto. See § 1.1244(c)-2 for the limitation on the amount that may be received by the corporation under the plan. For purposes of section 1244, an increase in 10 the basis of outstanding stock as a result of a contribution to capital is not an issuance of stock. (2) To qualify, the stock must be issued during the period of the offer, which period must end not later than two years after the date the plan is adopted. Stock which is subscribed for during the period of the plan but not issued during such period cannot qualify as section 1244 stock. Stock issued on the exercise of a stock right, stock warrant, or stock option (which right, warrant, or option was not outstanding at the time the plan was adopted) will be treated as issued pursuant to a plan only if the right, warrant, or option is applicable solely to unissued stock offered under the plan and is exercised during the period of the plan. (3) Stock subscribed for prior to the adoption of the plan, including stock subscribed for prior to the date the corporation comes into existence, may be considered issued pursuant to a plan adopted by the corporation if the stock is not in fact issued prior *12 to the adoption of such plan. We specifically upheld the validity of these regulations and the requirements they impose in Bernard Spiegel, 49 T.C. 527 (1968). It is clear from the facts that on its face the plan adopted by King-Farr, Inc., failed to specify in terms of dollars the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto as required by section 11 1.1244(c)-1(c), Income Tax Regs. Petitioners, however, contend that there was substantial compliance with section 1244. In Pierre Godart, 51 T.C. 937 (1969), affirmed 425 F.2d 633 (C.A. 2, 1970), we held that the failure of a plan to specifically state in terms of dollars the maximum amount to be received in consideration for the stock to be issued pursuant thereto was enough by itself to disqualify a purported plan under section 1244. Also see William Siebert, Sr., 53 T.C. 1, 6 (1969). Whereas, petitioners contend that a statement of the total amount of stock that may be sold during the ensuing 2 years is unimportant because a total reading of the resolution and the actual facts which took place during the *13 ensuing fiscal year show a fair compliance with section 1244, we disagree. In answer to a similar argument, the Court of Appeals for the Fifth Circuit stated in Spillers v. Commissioner, 407 F.2d 530, 533 (C.A. 5, 1969), affirming a Memorandum Opinion of this Court, "If we put our imprimatur on what the taxpayers characterize as superfluous we would effectively repeal the requirements for section 1244 stock * * *." Accordingly, we conclude that King-Farr, Inc., did not issue its stock pursuant to the terms of section 1244 and the regulations issued pursuant thereto. 12 Therefore, petitioners are not entitled to deduct the losses resulting from the liquidation of King-Farr, Inc., as ordinary losses but these losses must be treated as capital losses. We need not reach respondent's alternative contention. Decisions will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩