EUGENE COLOMAN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Coloman v. Commissioner
Docket Nos. 3667-72, 3668-72 3670-72, 3671-72.
United States Tax Court
T.C. Memo 1974-78; 1974 Tax Ct. Memo LEXIS 241; 33 T.C.M. (CCH) 411; T.C.M. (RIA) 74078; March 28, 1974, Filed. *241 1. Held: A corporation in which the petitioners held stock did not adopt a "plan" to offer stock pursuant to section 1244(c) (1), and the petitioners are therefore not entitled to the benefits of section 1244. 2. Held: The petitioners have failed to prove that their basis in stock that became worthless was in excess of zero. Stephen A. Pace, for the petitioners. George W. McDonald, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: The respondent has determined the following deficiencies in petitioners' income tax: Docket No.
Year
Amount
3667-72
1970
$391.21
3668-72
1970
391.21
3670-72
1967
1,627.89
3671-72
1968
756.15
1969
773.84
The issues for decision are: (1) Whether a corporation in which the petitioners held stock adopted a "plan" to offer stock pursuant to section 1244(c) (1)[2] so that the petitioners are entitled to the benefits of section 1244; and (2) whether the petitioners have met their burden of proof regarding the basis of stock that became worthless. FINDINGS OF FACT Some of the facts have been stipulated and *242 are found accordingly. The petitioners are Eugene Coloman and Louise D. L. Coloman, husband and wife, who maintained their legal residence in Buena Park, California, at the time the petition was filed in this case. They filed individual Federal income tax returns for 1967 and 1970 and joint Federal income tax returns for 1968 and 1969 with the district director of internal revenue, Los Angeles, California. Village Valet, Inc. was incorporated under the laws of the State of California on March 29, 1964. The petitioners and Raymond and Ethel Pett, all of whom were partners in a coin-operated dry cleaning business formed in 1962, transferred the assets and liabilities of the partnership to the corporation in exchange for stock. Immediately after the exchange, the former partners owned more than eighty percent of the outstanding common stock of the corporation. The stock certificates were to be issued upon receipt from the California Commissioner of Corporations of permission to issue stock. Stock certificates were issued to the original investors on October 10, 1964. The equity capital of Village Valet, Inc. never exceeded $1,000,000. In each year of Village Valet, Inc.'s existence, *243 it derived more than fifty percent of its aggregate gross receipts from the operation of a laundry and dry cleaning business. Village Valet, Inc. was dissolved and liquidation was commenced in September 1970. When the corporation ceased doing business, petitioners took possession of some of the corporation's equipment and ran the business themselves thereafter. The books and records of the partnership are no longer available. The books and records of Village Valet, Inc. consisted of a journal and general ledger, the first entries of which were comprised of summaries of partnership assets allegedly transferred to the corporation at the time it was incorporated. The initial balance sheet of Village Valet, Inc., dated April 30, 1964, states that the initial investment of the petitioners was $16,149.40. This balance sheet, however, was prepared by a public accountant only on the basis of records supplied to him and was not independently verified by him. OPINION The first issue for decision is whether amounts claimed as a loss by petitioners in 1970, resulting from the worthlessness of their stock in Village Valet, Inc. should be treated as an ordinary loss under the provisions *244 of section 1244 of the Internal Revenue Code of 1954. In his statutory notice of deficiency, the respondent determined that, at the time the stock of the corporation was issued, there was no written plan to issue stock as specified under section 1244 and section 1.1244(c)-1(c) (1), Income Tax Regs. The petitioners contend that, within the corporate records and documents necessarily incident thereto, there exists a plan to issue "section 1244 stock." Section 1244(a) provides as follows: (a) General Rule. - In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset. Section 1244(c), which defines section 1244 stock, provides that a corporation must adopt a plan meeting specified requirements before a loss on its stock can be treated as a loss from a sale of other than a capital asset. [3] One of these requirements is that the period during which the stock can be offered must not end later than two years after *245 the adoption of the plan. Section 1.1244(c)-1(c) (1), Income Tax Regs., provides that the common stock must be issued pursuant to a written plan adopted by the corporation. [4] *246 *247 *248 *249 *250 Footnotes
1. Cases of the following petitioners are consolidated herewith: Louise D. L. Coloman, docket No. 3668-72; Eugene Coloman, docket No. 3670-72; and Eugene Coloman and Louise Coloman, docket No. 3671-72. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise indicated. ↩
3. SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. * * * (c) Section 1244 Stock Defined. - (1) General. - For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, * * *. ↩
4. Sec. 1.1244(c)-1(c) Written Plan. (1) The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. See § 1.1244(c)-2 for the limitation on the amount that may be received by the corporation under the plan. For purposes of section 1244, an increase in the basis of outstanding stock as a result of a contribution to capital is not an issuance of stock. In an attempt to meet their burden of proof, the petitioners introduced into evidence the minutes of ten meetings of the board of directors. Although these minutes contain certain vague references to the issuance of stock, they do not contain any reference to section 1244. Furthermore, the petitioner testified that he was not even aware of the existence of section 1244 when the board of directors held their first meeting. We therefore conclude that the corporate minutes in issue do not constitute a "written plan" within the intendment of section 1244. Bernard Spiegel, 49 T.C. 527 (1968). Even if the minutes in issue constituted a written plan, such plan would not enable the petitioners to obtain the benefits of section 1244 because it does not state that the stock was to be offered for no longer than two years after the adoption of the plan. John H. Rickey, 54 T.C. 680 (1970), on appeal (C.A. 9, Nov. 13, 1970). Petitioners argue that the two-year requirement was met because the stock was to be issued as soon as the California Corporations Commissioner had granted a permit to issue stock. Even if we assume the truth of this allegation, it still does not establish that the two-year requirement was fulfilled. Accordingly, we hold that petitioners are not entitled to an ordinary loss deduction pursuant to section 1244. Petitioners contend that the corporation had attempted to obtain classification as a "Subchapter S" corporation and that this activity indicates that the corporation was attempting to achieve the benefits of section 1244. The purpose of this argument apparently is to show that, because the corporation evidenced an intent to achieve the benefits of section 1244, it should not be required to have complied rigidly with the requisite statutory tests. See, Godart v. Commissioner, 425 F. 2d 633 (C.A. 2, 1970), affirming 51 T.C. 937 (1969).We do not believe an attempt to obtain "Subchapter S" benefits evidences an intent to achieve the benefits of section 1244. Furthermore, assuming arguendo that such an intent did exist, we do not believe it would save the alleged plan in the present case, because there is not sufficient evidence to establish the existence of any plan. The second issue for decision is whether petitioners have met their burden of proof with regard to the basis of the stock in Village Valet, Inc. that became worthless when Village Valet, Inc. was liquidated. Section 165(b) provides that the adjusted basis of the property in issue shall be used to determine the amount of any loss. The petitioners contend that the basis of their worthless stock was equal to the basis of the partnership interest that they contributed to the corporation and that the partnership interest had a basis of $16,235.20. Petitioners computed this figure by relying on figures contained in the initial balance sheet of Village Valet, Inc. These figures, however, were based on figures that had been supplied to the accountant and that had not been verified by him. We therefore refuse to accept the basis figure proposed by petitioners. The books and records of the partnership, along with supporting documents, would have been the best evidence for determining the basis of petitioners' partnership interest. These records, however, were not available. The petitioners offered no explanation as to why the records could not be introduced into evidence. When such records are not available, we have held that other sources of evidence were acceptable to prove basis. See Alameda Realty Corporation, 42 T.C. 273 (1964). In the present case, however, petitioner failed to produce such evidence other than his own testimony, which was imprecise and vague. Petitioner was unable to recall what amounts of cash and property were contributed to the partnership or the corporation. He was unable to establish precisely the amounts that the partnership invested in the various types of equipment it purchased. He failed to indicate with specificity the extent to which this equipment had depreciated at the time it was contributed to the corporation. Accordingly, we have no choice but to hold that petitioners have failed to establish that their stock had a basis in excess of zero and that they therefore have not proven that they realized a loss upon the liquidation of the corporation. Decisions will be entered for the respondent.