DAVID R. HURD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hurd v. Commissioner
Docket No. 6750-73.
United States Tax Court
T.C. Memo 1975-6; 1975 Tax Ct. Memo LEXIS 366; 34 T.C.M. (CCH) 32; T.C.M. (RIA) 750006; January 13, 1975, Filed. Thomas J. Taylor, for the petitioner. R. Travis Douglas, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined deficiencies in the petitioner's income taxes for the years 1966 and 1969 in the respective amounts of $6,288.51 and $4,078.07. The only issue for decision is whether petitioner in 1969 incurred a loss on the sale or exchange of "section 1244 stock" which is entitled to treatment as an ordinary loss to the extent of $50,000. All of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner *367 is an individual who resided in Metairie, Louisiana, at the time his petition herein was filed. He filed his 1966 amended income tax return and his 1969 return with the Internal Revenue Service Center, Austin, Texas. His original 1966 return was filed with the district director of internal revenue, New Orleans, Louisiana. Prior to April 1, 1967, petitioner owned and operated a sole proprietorship under the name of Barker Barge Line. On that date, Barker Barge Line, Inc., was incorporated. The articles of incorporation contain the following provisions pertinent to the within dispute: (1) Article I, dealing with corporate powers, provides that "this corporation avails itself of the provisions of Section 1244 of the Internal Revenue Code." (2) Article VI provides: The total authorized number of shares of this corporation is Thirty Thousand (30,000) shares of common stock of a par value of Ten and No/100 - ($10.00) Dollars each, and Five Thousand (5,000) shares of preferred stock of a par value of Ten and No/100 ($10.00) Dollars each. The capital stock of this corporation shall be fully paid and non-assessable when issued, and shall be issued only for *368 labor done or for property actually received or cash to be paid, at such times and in such amounts and after such notice as may be determined by the Board of Directors, except that in payment of: The subscription of Twenty Two Thousand Five Hundred Eighty - (22,580) shares of its stock of the par value of Two Hundred Twenty Five Thousand Eight Hundred and No/100 ($225,800.00) Dollars by David R. Hurd, this corporation may receive and take title to the business now being operated by David R. Hurd and known as Barker Barge Line all of which assets and liabilities are fully described in the accurate, detailed and itemized description of same which is hereto attached marked "Exhibit A." and the net value of which said property and assets has been appraised by the parties hereinbelow named as the Board of Directors of this corporation as having a value of at least Two Hundred Twenty Six Thousand Twenty Five and 63/100 ($225,025.63) [sic ] Dollars. The Board of Directors shall fix the terms and conditions of sale and the time for the payment of all stock sold. (3) Article VII provides: The amount of paid-in capital with which this corporation shall begin business is Two Hundred *369 Twenty Six Thousand and No/100 ($226,000.00) Dollars, which amount, on the execution of these Articles has been paid and accounted for as more fully described in "Exhibit A" attached hereto. On April 3, 1967, the first meeting of incorporators was held and adopted the following resolutions: Upon motion, duly made, seconded and carried, it was RESOLVED, that the Board of Directors be and they are hereby authorized, in their discretion, to issue all or any portion of the duly authorized stock of this corporation up to the full amount or number of shares authorized by the certificate of incorporation, in such amounts and for such considerations as from time to time shall be determined by the Board and as may be permitted by law. Upon motion, duly made, seconded and carried, it was RESOLVED, that the said Board of Directors be and they are hereby authorized in their sole and uncontrolled discretion by a majority vote to fix the value of the shares of this corporation, to determine the character, and determine and fix the value of the assets or property offered to the corporation in exchange for its stock. Also on April 3, 1967, the Board of Directors of the corporation held *370 their first meeting, at which the following resolution was adopted: On motion duly made, seconded and carried, it was resolved that the president of this corporation be and he is hereby authorized to purchase in the name of and for the corporation from David R. Hurd, personally, all of the physical assets listed on "Exhibit A" totaling Three Hundred Sixty One Thousand Two Hundred Seventy Five and 63/100 ($361,275.63) Dollars less liabilities shown on "Exhibit A" in the amount of One Hundred Thirty Five Thousand Two Hundred Fifty and No/100 ($135,250.00) Dollars for which the corporation agrees to pay the sum total of Two Hundred Twenty Five and 63/100 ($225.63) Dollars cash, and Twenty Two Thousand Five Hundred Eighty (22,580) shares of capital stock with a par value of Ten and No/100 ($10.00) Dollars of Barker Barge Line, Inc., it being understood that the corporation will and does assume all of the liabilities shown on "Exhibit A". On or about April 3, 1967, petitioner exchanged all of the assets and liabilities of his sole proprietorship for 22,580 shares of common stock of the corporation in accordance with the foregoing. On June 7, 1968, 2,500 shares of common stock of *371 the corporation was issued to a person named "Green". On December 18, 1968, 700 shares of common stock of the corporation was issued to petitioner. The corporation was liquidated on June 13, 1969. Petitioner surrendered his common stock and received assets valued at $6,818.44. Petitioner's basis in his stock was $233,000.00. At the time of the liquidation, there remained unissued 4,220 shares of the corporation's authorized common stock and 5,000 shares of its authorized preferred stock. Petitioner claimed an ordinary loss of $50,000 from sale of section 1244 stock on his 1969 return. This resulted in a net operating loss which petitioner carried back to 1966. Respondent disallowed both the deduction and the carryback on the ground that petitioner's stock was not issued pursuant to a written plan complying with section 1244(c)[1] and the regulations thereunder. *372 At the outset, we note that this Court has on several occasions affirmed the validity of respondent's regulations under section 1244 and, although recognizing the legislative purpose in enacting that section to encourage the flow of new funds into small businesses, has imposed a standard of rigorous observance of their requirements. E.g., Marcia B. Kaplan, 59 T.C. 178 (1972); John H. Rickey, 54 T.C. 680 (1970), affd. 502 F.2d 748 (C.A. 9, 1974); Bernard Spiegel, 49 T.C. 527 (1968); Wesley H. Morgan, 46 T.C. 878 (1966). See Spillers v. Commissioner, 407 F.2d 530 (C.A. 5, 1969), affirming T.C. Memo. 1967-216. Only common stock can be considered "section 1244 stock" (see section 1244(c) (1)) and respondent's regulations set forth three key elements which must be satisfied for such stock to be entitled to the benefits of the section (see section 1.1244(c)-1(c), Income Tax Regs.): (1) there must be a written plan pursuant to which such stock is issued; (2) the plan must offer "only such stock during a period specified in the plan ending not later than two years after the date the plan is *373 adopted" and the stock must be issued within such period; and (3) "[the] plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation." Petitioner asserts that the several provisions of the articles of incorporation when taken together satisfy these three elements. Essentially, he argues that: (a) the reference in Article I to section 1244 shows that the corporation contemplated that its stock would be issued pursuant to that section; (b) the specification in Article VI of the subscription by petitioner to 22,580 shares of stock with an appraised value and the amount of paid-in capital with which the corporation was to begin business fixed the maximum amount to be received by the corporation and designated the requisite two-year period and (c) that said 22,580 shares were in fact issued during that period. Whatever the limits of the "written plan" requirement may be (cf. Eger v. Commissioner, 393 F.2d 243 (C.A. 2, 1968), reversing T.C. Memo. 1966-192) and assuming without deciding that articles of incorporation as such can contain such a plan (see and compare William O. Hayden, 52 T.C. 1112 (1969)), *374 [2] we think that the various links in petitioner's chain of argument lack the necessary strength to sustain his position. In the first place, no two-year limitation as such appears anywhere in the articles and a statement that the corporation will begin business with a certain amount of capital is no substitute for the required specification that stock must be issued within two years, even if it may be inferred that business was meant to commence immediately. Cf. Anderson v. United States, 436 F.2d 356 (C.A. 10, 1971); Spillers v. Commissioner, supra.[3] In the second place, we think that petitioner is on the horns of a dilemma. If, indeed, the articles of incorporation constitute the written plan, we find it impossible so to construe the articles as to limit the section 1244 stock to the shares initially issued to petitioner. Certainly, the reference in the articles of incorporation to section 1244 is not so limited. Under these circumstances, it clearly cannot be said that there was a two-year period or a maximum dollar amount applicable to the remaining 7,420 shares of authorized common stock. Godart v. Commissioner, 425 F.2d 633 (C.A. *375 2, 1970), affirming 51 T.C. 937 (1969); Spillers v. Commissioner, supra; Marcia B. Kaplan, supra; William Siebert, Sr., 53 T.C. 1 (1969). [4] Compare John H. Rickey, supra.[5] Moreover, given the unqualified reference to section 1244 in the articles of incorporation, it would appear that to the extent a written plan existed it covered the authorized 5,000 shares of preferred stock as well, thereby violating the provisions of section 1244(c) (1) (A) and section 1.1244(c)-1(b) and (c), Income Tax Regs., that the offer under the plan be limited to common stock. *376 We recognize that in most of the cases decided against the taxpayer, the evidence of corporate action did not make any reference to section 1244. Eger v. Commissioner, supra, found such a reference adequate to qualify the stock issue there involved as section 1244 stock, but we do not consider that this case furnishes petitioner with sufficient sustenance. Not only did the Second Circuit Court of Appeals emphasize that the transactions involved therein occurred before respondent's regulations under section 1244 were issued, but the Court's subsequent decision in Godart v. Commissioner, supra, focused more directly on the two-year limitation contained in both the statute and the regulations. To be sure, Godart also reflected no reference to section 1244 in the corporate action, but, in holding for respondent, the Court of Appeals made the following significant statement (425 F.2d at 637-638): "We do not mean either that ritualistic reference to § 1244 is essential or that such a reference will save a plan that does not meet the statutory tests." (Emphasis added.) In short, we are admonished that evidence of intention to obtain the benefits *377 of section 1244 is not enough in and of itself. In our view, that is the most that the record herein reveals. [6] Accordingly, we apply the admonition and sustain respondent's disallowances. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. Subsection (c) of section 1244 provides in pertinent part: (c) Section 1244 Stock Defined. - (1) In general. - For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, (C) at the time such plan was adopted, no portion of a prior offering was outstanding, (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), * * *. ↩
2. But see Gerald Hoffman, T.C. Memo. 1970-16↩. 3. In this connection, we note that the recital of the contemporaneous payment by Hurd and the amount of paid-in capital with which the corporation was to commence business (which are not identical in amount) is contradicted by the minutes of the first meeting of the Board of Directors, which authorized prospectively the acquisition of the assets of Hurd's sole proprietorship.↩
4. See also Daniel Farr, T.C. Memo. 1973-283↩. 5. See also Estate of Roy J. Harris, T.C. Memo. 1968-288; George H. Frahm, T.C. Memo. 1974-138↩. 6. Cf. Daniel Farr, supra. Compare also Bernard Spiegel 49 T.C. 527 (1968), and Wesley H. Morgan, 46 T.C. 878↩ (1969), both decided, however, before Eger.