ROBERT MOUAKAD AND ALICE MOUAKAD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mouakad v. Commissioner
Docket No. 4544-75.
United States Tax Court
T.C. Memo 1978-358; 1978 Tax Ct. Memo LEXIS 156; 37 T.C.M. (CCH) 1497; T.C.M. (RIA) 78358; September 12, 1978, Filed *156 Petitioner's purchase of stock in a corporation was evidenced by a letter agreement which stated that the corporation would use its "best efforts to effect corporate qualification" under sec. 1244. Held, petitioner failed to prove the requisite elements of sec. 1244(c). Donald F. Van Cook, for the petitioners. Patrick E. Whelan, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent, on February 26, 1975, issued a statutory notice in which he determined a deficiency in petitioners' Federal income tax for the calendar year 1972 in the amount of $ 21,562. The sole issue for our determination [1] is whether stock purchased by Robert Mouakad on November 20, 1968 qualified under section 1244, I.R.C. 1954, as stock entitled to ordinary loss treatment upon becoming worthless. *158 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Robert Mouakad and Alice Mouakad, husband and wife, resided in Demarest, New Jersey at the time the petition herein was filed. Petitioners filed their 1972 return with the internal revenue service center, Newark, New Jersey. Alice Mouakad is a party to this action only because she joined in the filing of the return and, accordingly, Robert Mouakad will hereinafter be referred to as petitioner. On November 20, 1968 petitioner [2] agreed to purchase 48,750 shares of Data Information Services Inc. (hereinafter D.I.S.) stock for $ 80,000. This agreement was evidenced by a letter agreement of the same date setting forth the terms of the offer and its acceptance. As further consideration for petitioner's capital contribution petitioner received a warrant to purchase an additional 20,000 shares of stock, exercisable for a period of 3 years from the effective date of *159 a comtemplated future public offering of D.I.S. stock at a price to be established in said offering. The stock was issued to petitioner on November 20, 1968 and held in escrow pending full payment of the purchase price. Petitioner paid $ 80,000 for the stock as follows: Date
Amount
11/25/68
$ 10,000
12/2/68
20,000
1/13/69
50,000
The purchase agreement made reference to section 1244 in the following terms: 12. [D.I.S.] agrees to use its best efforts to effect a corporate qualification under the provisions of Section 1244 of the Internal Revenue Code for you and other investors in the Company. D.I.S. was incorporated on September 3, 1968 in Delaware. Its income was derived from the sale of data processing services. It was authorized to issue 1,000,000 shares of one class of common stock at a par value of $ .01 per share. At the time petitioner agreed to purchase the D.I.S. stock there were 286,000 shares issued and outstanding, and there was no outstanding public stock offer although *160 such an offering was contemplated. On April 16, 1969 D.I.S. filed a form "S-1" Registration Statement with respect to a proposed offering of 220,000 shares in accordance with the rules of the Securities Exchange Commission. As of that date there were 388,500 shares issued and outstanding; D.I.S. carried the outstanding capital stock on its books at a par value of $ 3,885; and there was additional paid-in capital of $ 234,546. D.I.S. realized $ 880,000 from the sale of stock through the public offering. D.I.S. ceased doing business during the calendar year 1972.At that time all outstanding stock of the corporation was worthless. Petitioners claimed an ordinary loss of $ 50,000 on their Federal income tax return for the taxable year 1972 based upon the worthlessness of the D.I.S. stock in that year. Respondent disallowed the deduction based on his determination that the loss was capital in character. OPINION Normally a loss incurred when a capital asset becomes worthless is a capital loss and is deductible only to the extent of the taxpayer's capital gains plus $ 1,000 of his ordinary income. Sections 165(f), 1211 and 1212. However, section 1244 provides an exception to *161 the general rule when the loss is incurred with respect to "section 1244 stock." Section 1244(a). "Section 1244 stock" is defined by section 1244(c), in pertinent part, as stock offered by a small business corporation pursuant to a plan adopted by the corporation. The offering period specified in the plan may end no later than 2 years after the date of adoption. The corporation must have no prior offering outstanding at the adoption date. The regulations promulgated under the express mandate of section 1244(e) provide that the requisite plan must be in writing.Income Tax Regs. section 1.1244(c)-1(c). The validity of the regulations under section 1244 has been upheld. E.g. Spiegel v. Commissioner,49 T.C. 527, 531 (1968). Petitioner contends that the letter agreement placed in evidence is sufficient proof that the stock is section 1244 stock. His syllogism works as follows: (1) the agreement shows that the corporation agreed to "use its best efforts" to satisfy section 1244; (2) the attorney representing petitioner in the stock purchase was assured that the stock had been issued pursuant to a corporate resolution which provided that the stock complied with *162 section 1244; (3) there is a presumption that officers and directors of a corporation properly perform their duties; (4) therefore we have no choice but to find that all the requirements of section 1244 were satisfied. Unfortunately in all worlds except utopia such reasoning must be deemed unrealistic, even specious. The reference in the letter agreement to section 1244 only establishes that the parties to the agreement hoped that the stock would be section 1244 stock. However, that D.I.S. intended and hoped to comply with a provision of the Internal Revenue Code is far from conclusive proof that such compliance in fact took place. Petitioner presented no evidence which established that a written plan had been prepared or that such plan had been adopted. Spiegel v. Commissioner,supra. None of petitioner's witnesses ever saw either a written plan or a corporate resolution adopting a plan. The C.P.A. who prepared petitioner's 1972 return had been informed by the corporate counsel that "to the best of his recollection" the stock was section 1244 stock. The attorney, who represented petitioner in the stock sale and also acted as an escrow agent for the sale, *163 was "guaranteed" by the corporate counsel that the stock would be issued legally and pursuant to the terms of the letter agreement. Even the letter agreement itself cannot serve in lieu of a plan because that agreement does not establish facts pertinent to the remaining elements necessary to qualification under section 1244(c)(1): the offering period under the plan; that at the time the plan was adopted the corporation was a small business corporation; the existence or nonexistence of prior outstanding offers; the consideration for which the stock was offered; and the source of the corporation's gross income. Siebert v. Commissioner,53 T.C. 1, 5 (1969). [3]
Based on the facts and circumstances herein we have no choice but to find that the stock issued by D.I.S. to petitioner on November 20, 1968 was not section 1244 stock. Therefore, the loss resulting from the worthlessness of such stock is properly characterized as a capital loss. Decision will be entered for the Respondent *164 . Footnotes
1. Petitioners have conceded a claimed deduction for taxes in the amount of $ 255 was properly disallowed.↩
2. This agreement was made in conjunction with a third party whose rights and duties under the contract were identical to those of petitioner.↩
3. Because petitioner has failed to prove the existence of a plan there is no need for us to determine whether the warrants for purchase of additional stock would cause disqualification.↩