**CASCO BANK AND TRUST COMPANY and Rita B. Preston, Co-Executor and Co-Executrix of the Estate of William A. Preston, Jr., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 14–110.

United States District Court, D. Maine, S. D.

Nov. 17, 1975.

John W. Philbrick, Thomas J. Van Meer, Portland, Me., for plaintiffs.

Peter Mills, U. S. Atty., Portland, Me., Daniel J. Dinan, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a suit for refund of some $61,587.85 federal income taxes and interest alleged to have been erroneously assessed to and collected from plaintiffs with respect to the 1968 and 1971 joint income tax returns of William A. Preston, Jr. (since deceased) and Rita B. Preston. All other issues having been resolved in favor of the defendant,[1] the only issue remaining for decision is whether, in 1971, Mr. and Mrs. Preston incurred a "Section 1244 stock" loss with respect to their Maloney & Preston, Inc. stock. This issue is before the Court on cross-motions for summary judgment.

The facts are stipulated. Maloney & Preston, Inc. was organized under the laws of the State of Maine on September 12, 1968. At the organization meeting of the incorporators of the new corporation on that date, Mr. and Mrs. Preston and an attorney were elected directors. Immediately following the organization meeting, a special meeting of the board of directors was held, at which the directors adopted a plan for the issuance of common stock. The minutes of that meeting state:

All members were present.

On motion duly made and seconded, it was

VOTED: To adopt the following "Plan to Issue Section 1244 Stock":

1) The Plan shall become effective September 12, 1968.

---

1. Plaintiffs also challenged the Commissioner's disallowance of a 1971 deduction for a business bad debt in the amount of $105,807.46 and of a loss carryback adjustment decreasing the Prestons' 1968 income tax liability. After trial, this Court upheld the Commissioner's action. Entry of final judgment was deferred pending determination of the remaining issue.

2) The Corporation is authorized to offer and issue up to One Hundred (100) shares of Common Stock, no par value, and all such stock shall be issued subsequent to the date the Plan becomes effective.

3) The Corporation shall offer and issue such One Hundred (100) shares of Common Stock from the date hereof or from two (2) years from above date.

4) During such period as set forth in Paragraph 3, the Corporation shall issue and offer only such Common Stock.

5) Such stock shall be issued only for money and other property.

6) Such other action shall be taken by the Corporation as shall qualify the stock offered and issued under this Plan as "Section 1244 Stock", as such term is defined in the Internal Revenue Code and Regulations issued thereunder.

On motion duly made and seconded, it was

VOTED: That the proper officers of the Corporation be and they are hereby authorized, empowered and directed to do and perform any and all acts and deeds necessary to carry out the "Plan to Issue Section 1244 Stock".

Pursuant to this plan, Maloney & Preston, Inc., on October 18, 1968, issued 53 shares of common stock. Mr. Preston received 51 shares, in exchange for which he paid $20,000 cash and property consisting of vehicles, equipment and a small building having a total fair market value of $13,752. Each of the other directors was issued one qualifying share. The corporation issued no additional common stock. At no time during the existence of the corporation did contributions to capital and paid-in surplus exceed $500,000, nor did the eq-

uity capital of the corporation exceed $1,000,000.

Subsequently, the corporation experienced financial difficulties, and on December 21, 1971, it was dissolved pursuant to an order of the Cumberland County, Maine, Superior Court. At that time the corporation was insolvent and its stock worthless. On their 1971 joint federal income tax return, Mr. and Mrs. Preston claimed a Section 1244 loss of $33,752 on the worthlessness of their Maloney & Preston, Inc. stock. The Commissioner of Internal Revenue disallowed the claim and treated the loss as a long-term capital loss not within the provisions of Section 1244. Plaintiffs paid the assessed deficiencies and interest, filed timely claims for refund, and, when their claims were disallowed, brought the present action.

Generally, a loss incurred upon the sale of capital stock or upon such stock becoming worthless is a capital loss, the deductibility of which is limited to capital gains plus $1,000 of ordinary income. *See* Internal Revenue Code of 1954, §§ 165(g), 1211(b), 1221, 1222 (26 U.S.C.) ("the Code"). However, Section 1244 of the Code, 26 U.S.C. § 1244, allows certain losses from the sale or worthlessness of stock to be treated as an ordinary loss deductible in full against ordinary income if the stock qualifies as "Section 1244 stock" as defined in Section 1244(c)(1).[2] Section 1244 was enacted in 1958 to reduce the risk of investment in a "small business corporation" by providing that a loss on Section 1244 stock may be treated as an ordinary (rather than capital) loss if the venture turns out to be unsuccessful. *See* H.R.Rep. No. 2198, 85th Cong., 1st Sess. (1958), 1959–2 Cum.Bull. 709. In order, however, for stockholders to obtain the special benefits of Section 1244, the express requirements of that section and of the regulations issued thereunder

---

2. The relevant provisions of Section 1244 are set forth in an appendix.

must be met. *See, e.g., Morgan v. Commissioner,* 46 T.C. 878, 889–90 (1966).[3]

■ The Commissioner concedes that the plan adopted by the board of directors of Maloney & Preston, Inc. meets the requirements of Section 1244 and the implementing Treasury regulations in all respects save one. The Commissioner argues that the plan was defective because it failed to specify in dollars the maximum consideration to be received for the stock which could be offered under the plan, as required by Section 1244(c) and the applicable regulation. The Court agrees.

Section 1244(c)(1) defines "Section 1244 stock," in pertinent part, as follows:

(c) *Section 1244 stock defined.—*

(1) *In general.—*For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if—

. . . . . .

(B) at the time such plan was adopted, such corporation was a small business corporation, * * *

Section 1244(c)(2), in pertinent part, defines a "small business corporation" as follows:

(2) *Small business corporation defined.—*For purposes of this section, a corporation shall be treated as a small business corporation if at the time of the adoption of the plan—

(A) the sum of—

(i) the aggregate amount which may be offered under the plan, plus

(ii) the aggregate amount of money and other property . . . received by the corporation after June 30, 1958, for stock, as a contribution to capital, and as paid-in surplus,

does not exceed $500,000; * * *

In addition, Section 1.1244(c)–1(c) of the Treasury Regulations on Income Tax (1954 Code), 26 CFR § 1.1244(c)–1(c), adopted October 8, 1960, provides, in part:

(c) *Written plan.* (1) The common stock must be issued pursuant to a written plan . . . . The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. * * *

Plainly, the plan adopted by Maloney & Preston, Inc. failed to state in dollars the maximum consideration to be received by the corporation for the stock to be issued under the plan, as required by Regulation 1.1244(c)–1(c). Plaintiffs contend, however, that there was substantial compliance with Section 1244, because Paragraph (6) of the plan, by requiring that the stock issued thereunder qualify as Section 1244 stock, limited to $500,000 the maximum consideration which could have been received by the corporation for its stock. That paragraph provides:

6) Such other action shall be taken by the Corporation as shall qualify the stock offered and issued under this Plan as "Section 1244 Stock", as such term is defined in the Internal Revenue Code and Regulations issued thereunder.

But whether Paragraph (6) did or did not limit to $500,000 the maximum amount the corporation could have received for its stock, it clearly did not meet the requirement of the regulation that the plan specifically state a maximum amount in dollars. When the plan was adopted, the regulation had been in force for eight years; it required that a Section 1244 plan specifically state in dollars the maximum amount of stock which could be issued under the plan; the plan adopted by Maloney & Preston,

---

3. *Compare Eger v. Commissioner,* 393 F.2d 243 (2d Cir. 1968), which concerned a plan for issuance of Section 1244 stock adopted prior to the adoption of the Treasury Regulations promulgated under that section.

Inc. contained no such figure. The failure of the plan to state specifically in terms of dollars the maximum amount which the corporation could have received for its common stock is fatal to plaintiffs' Section 1244 claim. *Accord, Farr v. Commissioner,* 32 T.C.Mem. 1366 (1973); *Godart v. Commissioner,* 51 T. C. 937, 943 (1969) (alternative holding), *aff'd on other grounds,* 425 F.2d 633 (2d Cir. 1970). *Cf. Spillers v. Commissioner,* 407 F.2d 530 (5th Cir. 1969); *McClanahan v. United States,* CCH 1975 Stand.Fed.Tax Rep. (U.S.Tax Cas.) ¶ 9140 (W.D.La. Dec. 16, 1974); *Siebert v. Commissioner,* 53 T.C. 1 (1969). In *Morgan v. Commissioner, supra,* at 889, the Tax Court made an observation which is highly germane to the instant case:

> This confusion, which must militate against petitioners who have the burden of proof, is unfortunate because this investment in the stock of a small business corporation . . . appears to be the type of investment which section 1244 was enacted to encourage. Had the incorporators . . . and investors . . . had good and timely legal advice, this confusion would probably have been avoided, but section 1244 being designed to provide a tax benefit to a rather limited group of taxpayers as it is, we feel that qualification for those benefits requires strict compliance with the requirements of the law and the regulations promulgated pursuant to the specific instructions therefor included in section 1244(e). (Footnote omitted.)

■ Only one further comment is necessary. At oral argument, plaintiffs' counsel suggested that to the extent Regulation 1.1244(c)-1(c) requires a Section 1244 plan to state in dollars the maximum amount which can be received for stock issued under the plan, the regulation is inconsistent with the statute and hence invalid. There is no merit in this contention. The regulation was promulgated pursuant to the authority expressly delegated to the Commissioner in Section 1244(e). It implements the statutory requirement of a plan, the purpose of which is "to give unequivocal evidence of the taxpayer's commitment to investment in the covered type of small business enterprise." *Eger v. Commissioner,* 393 F.2d 243, 247 (2d Cir. 1968). Moreover, the regulation directly carries out the intent of Congress as reflected in the report of the House Ways and Means Committee: "The stock must have been issued pursuant to a plan to offer not more than a stated dollar amount of stock during a period . . . specified in the plan." H.R. Rep. No. 2198, *supra,* at 714. In short, the regulation is reasonable and well within the Commissioner's authority. *See Spiegel v. Commissioner,* 49 T.C. 527, 531 (1968); *Morgan v. Commissioner, supra,* at 889–90.

For the foregoing reasons, the Court holds that the stock issued under the Maloney & Preston, Inc. plan clearly did not qualify for Section 1244 treatment. Plaintiffs' motion for summary judgment is denied; defendant's motion for summary judgment is granted; and, all issues having been determined in favor of defendant, judgment will be entered dismissing the action with prejudice.

It is so ordered.

## APPENDIX

Internal Revenue Code of 1954 (26 U.S. C.):

§ *1244. Losses on small business stock*

(a) *General rule.*—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset.

\*      \*      \*      \*      \*      \*

(c) *Section 1244 stock defined.*—

(1) *In general.*—For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if—

(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,

(B) at the time such plan was adopted, such corporation was a small business corporation,

(C) at the time such plan was adopted, no portion of a prior offering was outstanding,

(D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities) and

\*　　\*　　\*　　\*　　\*　　\*

(2) *Small business corporation defined.*—For purposes of this section, a corporation shall be treated as a small business corporation if at the time of the adoption of the plan—

(A) the sum of—

(i) the aggregate amount which may be offered under the plan, plus

(ii) the aggregate amount of money and other property (taken into account in an amount, as of the time received by the corporation, equal to the adjusted basis to the corporation of such property for determining gain, reduced by any liabilities to which the property was subject or which were assumed by the corporation at such time) received by the corporation after June 30, 1958, for stock, as a contribution to capital, and as paid-in surplus,

does not exceed $500,000; and

(B) the sum of—

(i) the aggregate amount which may be offered under the plan, plus

(ii) the equity capital of the corporation (determined on the date of the adoption of the plan),

does not exceed $1,000,000.

\*　　\*　　\*　　\*　　\*　　\*

(e) *Regulations.*—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section.