CHARLES A. MOGAB AND COLLEEN MOGAB, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8295–76.     Filed May 15, 1978.

*Larry W. Glenn* and *Myron S. Zwibelman*, for the petitioners.
*David T. Karzon, Jr.*, for the respondent.

WILES, *Judge:* Respondent determined a $6,000 deficiency in petitioners' 1972 income taxes. The only issue is whether petitioners' loss on their London Beef House, Ltd., stock was a loss on section 1244[1] stock.

### FINDINGS OF FACT

All facts have been stipulated and are found accordingly.

Petitioners Charles A. Mogab and Colleen Mogab, husband and wife, filed their 1972 joint Federal income tax return with the Internal Revenue Service Center, Kansas City, Mo. Petitioners were residents of Creve Coeur, Mo., when they filed their petition herein. Colleen Mogab is a party to this action solely

---

[1]All statutory references are to the Internal Revenue Code of 1954, as amended.

because she signed a joint return with her husband. Therefore, "petitioner" hereinafter will refer to Charles A. Mogab.

On April 30, 1969, petitioner purchased 6,000 shares of London Beef House, Ltd. (hereinafter London), stock for $2 per share. London was a domestic corporation and the stock issued was common stock. In all respects but one, the parties agree that the London stock purchased by petitioner was "section 1244 stock" as that phrase is defined by section 1244(c). The point of controversy between the parties is whether the plan under which petitioner's stock was issued satisfied the requirements of section 1244.

In pertinent part, London's original articles of incorporation, dated May 19, 1967, read:

### Article III

The Corporation shall have authority to issue one thousand (1000) shares of common stock, all of which stock shall be no par value stock.

### Article IV

The number of shares to be issued before the Corporation shall commence business is fifty (50) shares no par value common stock. The capital with which the Corporation shall commence business is Five Hundred Dollars ($500.00), of this amount Five Hundred Dollars ($500.00) has been paid up in lawful money of the United States.

### Article IX

A plan is hereby adopted, whereby all purchasers of the common stock authorized to be issued under Article III hereof who shall purchase such stock within two (2) years from the effective date of the Certificates of Incorporation issued to the Corporation by the Secretary of State of Missouri shall be allowed an ordinary loss rather than a capital loss from the sale, exchange or worthlessness of said stock purchased under the provisions of this plan as provided under Section 1244 of the Internal Revenue Code of 1954; as amended by the Technical Amendments Act of 1958.

Article III was amended April 9, 1969, prior to petitioner's stock purchase to read:

The amount of the total authorized capital stock of this Corporation is one million (1,000,000) shares of common stock of the par value of five cents (0.5¢) [sic] each.

(7)  * * *

Every stockholder shall receive 13,000 shares of common stock of the par value of five cents (0.5¢) [sic] each for every share of common stock of no par value surrendered.

On March 26, 1969, Harry L. Hilleary, one of London's original shareholders and an incorporator, sent petitioner a letter that stated in part:

> The purpose of this letter is to invite your participation, if you are so inclined, in the parent company. Our plan is to sell up to 125,000 shares at $2.00 per share, which will represent 25% of the company. The balance of 375,000 shares will be held by my associate, Jack Cahill, and myself. We each have approximately $10,000 invested in the company, plus we are on notes for another $150,000.

In a follow-up letter, dated April 22, 1969, Hilleary stated to petitioner:

> we have received commitments for the purchase of approximately 60,000 shares of stock at $2.00 per share of London Beef House, Ltd. A total of 125,000 shares is being offered at this price.

> It is our plan to continue the offering and raise the price to $2.25 per share effective May 1, 1969.

In 1972, petitioner's London stock became worthless, and on their 1972 joint income tax return petitioners claimed a $12,000 ordinary loss on the worthless stock. Respondent limited the amount of this deduction, stating in his notice of deficiency, "It is determined that the deduction of $12,000 claimed as a Section 1244 ordinary loss on the stock of London Beef House, Ltd., is in fact a long term capital loss."

## OPINION

The only issue we must decide is whether petitioner's loss on his London stock was a loss on section 1244 stock. The parties have agreed that petitioner's London stock satisfied the definition of section 1244 stock in all respects but one: the point of disagreement is whether the plan under which petitioner's stock was issued was an appropriate section 1244 plan.

Generally, section 1244(a)[2] provides that a loss on section 1244 stock shall, under certain conditions, and within specified limitations, be treated as an ordinary loss. Section 1244(c)

---

[2]Sec. 1244(a) reads:

(a) GENERAL RULE.—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset.

defines the term "section 1244 stock." Section 1244(c)(1)(A) establishes a plan requirement:

(1) IN GENERAL.—For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if —
(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,

The question before us is whether London's plan satisfied the plan requirement of section 1244(c)(1)(A).

Section 1.1244(c)–1(c), Income Tax Regs., requires that,

The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto.

Respondent contends that London's failure to specifically state, in terms of dollars, the amount to be received under the plan prevents London's plan from qualifying as a section 1244 plan. Therefore, stock issued under London's plan fails to qualify as section 1244 stock, and petitioner's subsequent loss on his worthless London stock resulted in a capital loss under section 165(g) rather than an ordinary loss under section 1244(a).

Petitioner disagrees with respondent contending that London's plan satisfied the statutory requirements of section 1244(c)(1)(A). Specifically, petitioner makes two arguments: First, despite the language of section 1.1244(c)–1(c), Income Tax Regs., petitioner argues that it is unnecessary to state the specific maximum dollar amount to be received under a section 1244 plan where the intent that the plan qualify as a section 1244 plan is clear.[3] Petitioner contends that stating the specific dollar amount in the plan is superfluous since any corporation receiving more than $500,000 for stock issued pursuant to a section 1244 plan would no longer be a "small business

---

[3]Petitioner relies on *Eger v. Commissioner*, 393 F.2d 243 (2d Cir. 1968), for support of his contention that the requirements of sec. 1.1244(c)–1(c), Income Tax Regs., need not be specifically followed. In that case the court specifically noted at page 246 that,

The regulations were not adopted until a time subsequent to the stock issue here, and we cannot charge the taxpayer with knowledge of their provisions.

\*     \*     \*     \*     \*     \*     \*

At least during the period prior to the adoption of regulations spelling out under the authorization in the statute to promulgate such regulations, the details required of the plan, we think that fidelity to the purpose of the statute calls for liberal application of its language.

London adopted its purported sec. 1244 plan well after the regulations were promulgated and therefore was aware of their requirements. *Eger v. Commissioner* is therefore distinguishable.

corporation" as defined by section 1244(c)(2), and hence, the stock issued under the plan would not qualify as section 1244 stock.

Second, petitioner contends that if section 1244 plans are required to state the specific maximum dollar amount to be received under the plan, London's plan, consisting of article IX of the articles of incorporation, and the two solicitation letters dated March 26, 1969, and April 22, 1969, does specifically set out, in terms of dollars, the maximum amount to be received by the corporation.

We disagree with both of petitioner's contentions. Section 1.1244(c)-1(c), Income Tax Regs., was issued pursuant to the Secretary of Treasury's specifically granted authority, contained in section 1244(e), to "prescribe such regulations as may be necessary to carry out the purposes of this section." Although section 1244(c)(1)(A) has no direct reference to a written plan containing a specific maximum dollar amount to be received thereunder, the Secretary of Treasury, in drafting section 1.1244(c)-1(c), Income Tax Regs., clearly followed the intent of Congress in requiring a written plan specifying a maximum dollar amount. H. Rept. 2198, 85th Cong., 1st Sess. (1958), 1959-2 C.B. 709, 714, describes the requirements intended to satisfy section 1244(c)(1)(A):

> The stock must have been issued pursuant to a plan to offer not more than a *stated dollar amount* of stock during a period (ending not later than 2 years after the date that the plan is adopted) specified in the plan. *Such plan must be in writing* * * * [Emphasis added.]

The above-quoted excerpt makes it clear that Congress wanted a written plan containing a *stated* dollar amount. In view of this clear, unequivocal congressional intent, section 1.1244(c)-1(c), Income Tax Regs., was appropriately drafted. Strict compliance with the requirements of section 1244 and regulations is necessary in order to obtain the benefit of section 1244. *Morgan v. Commissioner*, 46 T.C. 878, 889 (1966). The requirement that the plan contain a maximum stated dollar amount has been recognized on many occasions. See, e.g., *Spillers v. Commissioner*, 407 F.2d 530, 533 (5th Cir. 1969), affg. a Memorandum Opinion of this Court; *Siebert v. Commissioner*, 53 T.C. 1, 6 (1969); *Godart v. Commissioner*, 51 T.C. 937, 943-944 (1969), affd. 425 F.2d 633 (2d Cir. 1970); *Casco Bank & Trust Co. v. United States*, 403 F. Supp. 687, 691 (S.D. Me. 1975). We

therefore disagree with petitioner's first argument that London's section 1244 plan need not specifically state the maximum dollar amount to be received under the plan. Evidence of an intention to obtain the benefits of section 1244 is not enough in and of itself. Such a reference will not save a plan that does not meet the statutory tests. *Godart v. Commissioner*, 425 F.2d 633, 635–638 (2d Cir. 1970).[4]

Petitioner's second contention is that article IX of London's articles of incorporation, plus the two solicitation letters, dated March 26, 1969, and April 22, 1969, when viewed together do state a specific maximum dollar amount to be received by London under its section 1244 plan.

A section 1244 plan may be made up of more than one document; a proper integration of several documents may satisfy the requirements of a section 1244 plan. *Hayden v. Commissioner*, 52 T.C. 1112, 1124 (1969); cf. *Godart v. Commissioner*, 51 T.C. 937, 942 (1969); *Spiegel v. Commissioner*, 49 T.C. 527, 532 (1968). The question involved therefore is whether London's articles of incorporation and the subsequent solicitation letters constituted an adequate section 1244 plan.

Articles of incorporation with other documents may together constitute a section 1244 plan. *Hayden v. Commissioner*, 52 T.C. 1112, 1124 (1969). We do not believe, however, that the two solicitation letters plus article IX of London's articles of incorporation constitute a sufficient plan.

Article IX of London's articles of incorporation merely expresses an intent to qualify all stock issued within the corporation's first 2 years as section 1244 stock. No dollar limits are stated nor are the number of shares limited by article IX. Article III, as amended, authorizes 1 million shares of stock with a par value of 5 cents per share, but places no maximum dollar amount on the price of the stock. Solicitation letters, dated March 26, 1969, and April 22, 1969, indicate that 125,000 shares, or 25 percent of the company, are for sale at a price of $2 per share. Although petitioner argues these letters flesh out the section 1244 plan, we cannot agree. First, these solicitation letters were written by Harry L. Hilleary, an initial incorporator and a shareholder. There is no indication, however, of his

---

[4] *Hurd v. Commissioner*, T.C. Memo. 1975–6.

authority to write these letters, to determine their content, to limit the number of shares offered, or to determine their price. Section 1244(c)(1)(A) specifically requires that the *corporation* must have *adopted* the plan. See *Spiegel v. Commissioner*, 49 T.C. 527, 532 (1968). There is no indication in the record before us that London or its board of directors adopted the contents of the solicitation letters. Even if these solicitation letters constituted a portion of the plan adopted by the corporation, their content is too ambiguous to satisfy the requirements of a section 1244 plan. The articles of incorporation, as amended, indicate 1 million shares of stock are authorized, yet the solicitation letters indicate 125,000 shares represent 25 percent of the company. Petitioner has not clarified what happened to the 500,000 shares of stock not referred to in the solicitation letters, yet referred to in article III. Whether they would be offered at a price other than $2 or whether the corporation never intended to issue these shares is entirely unclear from the solicitation letters.

Although we appreciate petitioner's predicament—he had nothing to do with drafting London's section 1244 plan—we must conclude that London's section 1244 plan was never effectively and appropriately drafted. Without a properly written plan, petitioner's stock cannot constitute section 1244 stock.

To reflect the foregoing,

*Decision will be entered for the respondent.*

