RAYMOND J. AND MARIA E. FRANCIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Francis v. Commissioner
Docket No. 18745-81.
United States Tax Court
T.C. Memo 1987-362; 1987 Tax Ct. Memo LEXIS 362; 53 T.C.M. (CCH) 1427; T.C.M. (RIA) 87362; July 23, 1987. *362 In 1974 petitioners formed a corporation that issued stock to them based on a written plan. The corporation issued stock in exchange for $ 50,000. The stock issuance plan did not limit the period during which the stock could be issued. The plan also failed to state the maximum amount of consideration that could be paid for the stock. Held, the stock does not qualify as section 1244 stock. Robert Wyshak, for the petitioner. William Sabin, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Deficiency
Additions to Tax
Year
in Tax
Under Section 6653(a)
1975
$ 19,955.00
$   997.75
1976
$  1,385.64
$    69.28
1977
$  6,347.50
--
1978
$ 21,344.00
$ 1,067.00
After concessions, the only issue remaining for resolution is whether petitioners are entitled to an ordinary loss deduction of $ 50,000 for the taxable year 1978 pursuant to section 1244. [1]
This case was submitted with *363 the facts fully stipulated pursuant to Rule 122. Those facts as stipulated by the parties are so found. The stipulated facts and related exhibits are incorporated herein by this reference. Petitioners are individuals who were residents of Corona del Mar, California, at the time they filed the petition in this case. Petitioners jointly filed their 1975, 1976, 1977, and 1978 Federal income tax returns. In 1974 petitioner Raymond J. Francis (Raymond) formed a corporation known as Daddy Crisp Company (Daddy Crisp). Raymond was the president and 100 percent shareholder of Daddy Crisp during the taxable years in question. Raymond transferred $ 50,000 to Daddy Crisp in exchange for Daddy Crisp common stock. Raymond had a basis in this stock equal to $ 50,000. Daddy Crisp issued this stock pursuant to a plan that provided the following: Whereas, the corporation is a "small business corporation" within the meaning of Section 1244 of the Internal Revenue Code of 1954 as amended; whereas, it is in the best interests of the corporation to encourage investment in the shares of its stock by acting to adopt a plan to offer such stock which will qualify such stock as "Section 1244 Stock" and *364 there is no portion of prior offering of any stock of the corporation now outstanding; now, therefore, it is hereby Resolved that the common stock of the corporation, pursuant to Section 1244 of said Internal Revenue Code, is hereby adopted for the corporation and shall be effective as of the date hereof. The share subscription agreement received by the corporation from Raymond J. Francis subscribing to five hundred (500) shares of common stock of the corporation having a par value of $ 1.00 per share is hereby accepted and approved. The President and Secretary are hereby authorized and directed to issue to Raymond J. Francis five hundred (500) full paid and nonassessable shares of common stock of the corporation.
Daddy Crisp did not issue any stock to Raymond after November 6, 1978. The parties orally stipulated in open court that, in the event the Daddy Crisp stock did not satisfy the requirements of section 1244, the petitioners would be entitled to a long-term capital loss of $ 50,000 for 1978. As a general rule, a loss incurred when stock becomes worthless is a capital loss that is deductible to the extent of capital gains plus an additional amount of $ 3,000. See secs. 165(g) *365 and 1211(b). Section 1244, however, provides an exception to this rule for stock that qualifies as "section 1244 stock." [2] *366 Under this exception, an individual taxpayer filing a joint return with a spouse can deduct as an ordinary loss the basis of worthless stock up to a maximum of $ 50,000. [3] The only issue in this case is whether Daddy Crisp's stock plan satisfies the requirements of section 1244. We hold that it does not. The plan, among other things, must expressly state that the stock to be issued must be sold within a specified two-year period. Sec. 1.1244(c)-1(f)(1)(i), Income Tax Regs. In addition, the plan must state in terms of dollars the maximum amount of consideration the corporation will receive on issuance of the stock. Sec. 1.1244(c)-1(f)(1)(i), Income Tax Regs. The Daddy Crisp plan fails on both counts. This Court has adopted the view that qualification for the benefits of section 1244 require strict compliance with the requirements of the law and the regulations thereunder. Morgan v. Commissioner,46 T.C. 878, 889 (1966). When *367 taxpayers have failed to satisfy the technical requirements of the regulation promulgated under section 1244(e), this Court has refused to permit ordinary loss treatment. A plan does not satisfy the two-year requirement where the plan fails to state the time period in which the stock must be issued. Kaplan v. Commissioner,59 T.C. 178, 183 (1972); Warner v. Commissioner,48 T.C. 49, 54 (1967), affd. 401 F.2d 162 (9th Cir. 1968). Likewise, a plan is defective if it fails to set a dollar limitation on the amount to be paid for the stock. Casco Bank and Trust Co. v. United States,403 F. Supp. 687, 691 (D. Me. 1975), affd. 544 F.2d 528, 529 (1st Cir. 1976), cert. denied 430 U.S. 907 (1977); Mogab v. Commissioner,70 T.C. 208, 212 (1978); Siebert v. Commissioner,53 T.C. 1, 6 (1969). The Daddy Crisp plan does not specify the time period during which the stock may be issued, nor does it state the maximum amount of consideration to be paid for the stock. As a result, Raymond's stock in Daddy Crisp does not qualify as section 1244 stock. We sustain respondent's disallowance of the $ 50,000 deduction that petitioners claimed under section 1244. In accordance with the parties' oral stipulation *368 in open court, the petitioners are entitled to a long-term capital loss of $ 50,000 for 1978. [4]
To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 1244(c)(1) provided in part: (c) Section 1244 Stock Defined. -- (1) In General. -- For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if -- (A) such corporation adopted a plan after June 30, 1968, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, (C) at the time such plan was adopted, no portion of a prior offering was outstanding, (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and * * * Congress amended section 1244 and relaxed these requirements in 1978. These amendments are effective for stock issued after November 6, 1978. Pub. L. No. 95-600, sec. 345(e), 92 Stat. 2763, 2845 (1978), as amended by Pub. L. No. 96-222, sec. 103(a)(9), 94 Stat. 194, 212 (1980). Therefore, these amendments do not apply to Raymond's Daddy Crisp stock. 3. Congress increased this ceiling to $ 100,000 for qualifying losses taking place after 1978. See Pub. L. No. 95-600, sec. 345(b)(2), 92 Stat. 2763, 2845 (1978). See also sec. 1.1244(b)-1(b)(1), Income Tax Regs.↩ This increase does not apply to Raymond's Daddy Crisp Stock. 4. Of course, this loss is subject to the limitations contained in section 1211(b). ↩