JOSEPH P. AND M. CATHERINE COSGROVE, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cosgrove v. Commissioner
Docket No. 25352-83.
United States Tax Court
T.C. Memo 1987-401; 1987 Tax Ct. Memo LEXIS 398; 54 T.C.M. (CCH) 136; T.C.M. (RIA) 87401; August 17, 1987. *398 Petitioner and other investors formed Scott-Glenn Investments, Limited, in 1976 for the purpose of investing in Scotch whiskey receipts. After failure to receive SEC approval for the unregistered sale of such securities, Scott-Glenn ceased all attempts to do business. Held: the requirements of the regulations under section 1244 have not been complied with and petitioner is not entitled to a $ 10,000 ordinary loss. Held further: petitioner is liable for an addition to tax under sec. 6651(a)(1). Joseph P. Cosgrove, pro se. J. Leon Peace, Jr., for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' [1] 1977 Federal income tax of $ 4,686, and an addition to tax under section 6651(a)(1)[2] *399 of $ 496.73. After concessions, the remaining issues are (1) whether petitioner is entitled to a $ 10,000 ordinary loss under section 1244, and (2) whether petitioner is liable for an addition to tax under section 6651(a)(1). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of filing the petition herein, petitioner was a resident of Media, Pennsylvania. During the early part of 1976, petitioner and three other investors organized Scott-Glenn Investments, Limited (SGIL). The District of Columbia issued a Certificate of Incorporation on March 5, 1976. SGIL's Articles of Incorporation provided for two classes of common stock, which were divided into 10,000 shares of Class A stock and 90,000 shares of Class B stock. These two classes of stock were identical in all respects, except that the Class B shares carried no voting rights. The first joint meeting of the shareholders and board of directors of SGIL was held at its corporate headquarters in Washington, D.C. on March 11, 1976. At this meeting, petitioner signed a purchase agreement whereby he agreed to buy 1,000 shares of Class *400 A common stock and 8,000 shares of Class B common stock for $ 10,000. It was also at this meeting that the board of directors adopted a section 1244 stock purchase plan, a copy of which was attached to the corporate minutes of this meeting. That plan provided that the officers of the corporation were authorized to issue and sell shares of common stock payable in cash or other property, other than stock or securities, and that the corporation was prohibited from receiving cash and property worth more than $ 500,000. The offer to issue and sell such common stock was to terminate on March 11, 1978. SGIL was thus formed, and was capitalized with a total cash contribution from all investors of $ 28,000. In addition to the sums paid for shares of stock in SGIL, the board of directors at the March 11 meeting authorized the corporation to enter into a loan agreement with one of its shareholders, Roger Johnson (Johnson), in the amount of $ 32,000. Of the loan proceeds, $ 7,000 was deposited in a separate SGIL account in Riggs National Bank in Washington, D.C., with Johnson's retaining sole signatory authority. The remaining $ 25,000 was not to be disbursed until the corporation had received *401 assurance from the Securities and Exchange Commission (SEC) that all requirements for dealing in Scotch whiskey investment receipts had been met. The loan was to bear a reasonable rate of interest, and as further consideration for making the loan, Johnson was given control of the board of directors until the loan was repaid. Petitioner made installment payments pursuant to the stock purchase agreement as follows: June 12, 1976
$ 2,300
July 22, 1976
2,700
November 21, 1976
4,000
December 31, 1976
1,000
After making the second installment, petitioner contemplated breaching the stock subscription agreement due to SGIL's precarious financial position. However, as an incentive for him to complete the purchase, petitioner was given an additional 500 shares of Class A stock and 4,000 shares of Class B stock by agreement dated November 21, 1976. By late 1976, the refusal of the SEC to allow SGIL to deal in unregistered Scotch whiskey investment receipts was taking its toll upon the relationship of the shareholders to one another. Most of the ill will ran between Johnson and the three other investors. By the end of 1976, these three investors (including petitioner) were searching for ways to remove *402 Johnson from the corporation and attract new investors. To this end, they organized Scott-Glenn Investments, Limited, in Delaware on February 15, 1977. Petitioner and his fellow investors did not intend for the Delaware corporation to operate separately, and the same bank account and set of books were used. The only difference between the two corporations was the jurisdiction of incorporation. The D.C. corporation was never formally dissolved, but its charter was revoked in September 1977. No certificate of dissolution or revocation has been proffered for the Delaware corporation. After receipt of its Delaware Charter, SGIL engaged in little business activity except for fruitless attempts to find additional financing. The final entry on the company's books was for the week ending April 29, 1977, and shows a bank balance of $ 7,070.94. Of this amount, $ 7,000 was earmarked as being on deposit in Riggs National Bank in the name of SGIL upon which only Johnson could draw. SGIL had no other assets, as both its business premises and office equipment were leased. In November 1977 the corporation ceased all appearances of doing business. Petitioner's 1977 Federal income tax return *403 was filed on January 14, 1981. Attached to the return was a statement setting forth the name of the corporation, and the fact that the loss was sustained. Also attached to the return was a letter from Florian Taddonio, President of SGIL, offering to sell petitioner 1,500 shares of Class A and 12,000 shares of Class B common stock. The letter was typed on an SGIL letterhead that showed a King of Prussia, Pennsylvania, address. The letter stated the purchase price, but did not mention the manner in which it was to be paid. No evidence has been offered regarding petitioner's failure to file a timely return. OPINION The first issue is whether petitioner is entitled, pursuant to section 1244(a), [3] to an ordinary loss on the worthlessness of his SGIL stock. [4] *405 Petitioner contends that the stock is section 1244 stock which has become worthless and that his records are sufficient to substantiate both its status and worthlessness. Respondent contends that petitioner is not entitled to an ordinary loss since he has not proven that the provisions of section 1244 have been complied with. Respondent further contends that petitioner has failed to comply with the recordkeeping requirements of *404 section 1.1244(e)-1, Income Tax Regs. A shareholder of section 1244 stock must be either an individual or a partnership (so that the ordinary loss will flow through to an individual). Section 1244 stock was defined in section 1244(c) as follows: (1) In General. -- For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if -- (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, (C) at the time such plan was adopted, no portion of a prior offering was outstanding, (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), * * *. [5] *406 Pursuant to section 1244(e), respondent has been given broad regulatory authority to carry out the purposes of section 1244. Petitioner has not called into question the validity of these regulations, which this Court has found to be reasonable. Morgan v. Commissioner,46 T.C. 878, 889 (1966). The regulations under section 1244 require that the plan prescribed by section 1244(c)(1)(A) be in writing. Sec. 1.1244(c)-1(f)(1), Income Tax Regs. While such a requirement was not included in the statute, it was contemplated by Congress. See H. Rept 2198, 85th Cong. 2d Sess. 8. (1958), reprinted at 1959-2 C.B. 709. Section 1.1244(e)-1(a)(1), Income Tax Regs., requires that the plan appear on the records of the corporation. [6] The plan must state that stock is offered during the period ending not later than 2 years after the adoption of the plan. Sec. 1.1244(c)-2(c)(1), Income Tax Regs. The plan must also state the maximum *407 dollar amount of the stock which may be offered under the plan, which may not exceed $ 500,000. Sec. 1.1244(c)-1(f)(1), Income Tax Regs.
Aside from the requirement that the plan appear on the corporate records, section 1.1244(e)-1, Income Tax Regs., contemplates further substantiation by the corporation, and requires further substantiation by its shareholders. [7] *409 *410 Section 1.1244(e)-1(b), Income Tax Regs., requires the taxpayer/shareholder to attach a statement to his return setting forth the address of the corporation, the manner of acquisition and the nature and amount of the consideration paid. Sec. 1.1244(e)-1(b), Income Tax Regs. Additionally, if the taxpayer receives his stock in exchange for property other than money, the statement must also show the type of property and its fair market value and adjusted basis on the date of the exchange. Finally, section 1244 *408 stock must be distinguished from any other stock which the taxpayer may own in the corporation. These regulations are in accordance with the mandate given respondent under section 1244(e). Moreover, Congress contemplated that respondent's regulations would "include authority to require the maintenance of records sufficient to establish the identity of stock that qualifies as section [1244] stock." H. Rept. 2198, 85th Cong. 2d Sess. 12 (1958). We find that the substantitve requirements of section 1244 and the regulations promulgated thereunder relating to the plan and its contents have been satisfied. [8] However, the statement required by the regulations to be attached to petitioner's 1977 return is incomplete. While SGIL's address may be found in the letter also attached to the return, neither the statement nor the letter make *411 mention of the fact that such stock was purchased in installments. The issue therefore emerges whether the regulatory requirements may be satisfied by substantial compliance. We have held that substantial regulatory compliance will suffice where the regulatory requirement does not go to the substance or essence of the statute. See Cary v. Commissioner,41 T.C. 214 (1963); Taylor v. Commissioner,67 T.C. 1071 (1977). *412 However, this Court has always required strict compliance with section 1244 and the regulations promulgated thereunder. We have denied ordinary loss treatment for the absence of a written plan, Spiegel v. Commissioner,49 T.C. 527 (1968); [9] *413 for the failure of the plan to state a maximum dollar amount, Mogab v. Commissioner,70 T.C. 208 (1978); and for failure of the plan to state that stock must be issued within 2 years after the plan's adoption, Godart v. Commissioner,51 T.C. 937 (1969), affd. 425 F.2d 633 (2d Cir. 1970). In short, as we stated in Morgan v. Commissioner,46 T.C. 878, 889 (1966): section 1244 being designed to provide a tax benefit to a rather limited group of taxpayers as it is, we feel that qualification for those benefits requires strict compliance with the requirements of the law and the regulations promulgated pursuant to the specific requirements therefor included in section 1244(e).
See also Mogab v. Commissioner, supra at 212. The importance of complying with the record-keeping requirements of section 1.1244(e)-1, Income Tax Regs., was pointed out in Morgan v. Commissioner, supra at 892. [10] We do not decide whether these record-keeping requirements go to the substance or essence of the statute; rather we think that strict compliance with these requirements is compelled by existing case law, the broad legislative mandate of section 1244(e), and the legislative history. Accordingly, we hold for respondent on this issue. The second issue is whether petitioner is liable for an addition to tax under section 6651(a) which provides that if a return is not timely, an addition of 5 percent per month is imposed, up to a maximum of 25 percent, unless petitioner can show that "such failure is due to reasonable cause and not due to willful neglect." The burden of proof in this regard is upon petitioner. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). Petitioner has presented no evidence or argument explaining *414 his failure to timely file a return for 1977; therefore, respondent's determination on this issue is sustained. See Schad v. Commissioner,87 T.C. 609, 621 (1986). Decision will be entered under Rule 155.
Footnotes
1. M. Catherine Cosgrove is a party to this action solely by virtue of having signed a joint return with Joseph P. Cosgrove. All further references to petitioner are to Joseph P. Cosgrove. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. 3. SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (a) General Rule. -- In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as an ordinary loss. Sec. 1244(b) limits such ordinary losses to $ 50,000 per year on a joint return. Congress amended section 1244 in 1978. These amendments are effective for stock issued after November 6, 1978. Pub. L. 95-600, sec. 345(e), 92 Stat. 2763, 2845 (1978), as amended by Pub. L 96-222, sec. 103(a)(9), 94 Stat. 195, 212 (1980). Therefore, these amendments do not apply to petitioner's SGIL stock. Congress increased the ceiling to $ 100,000 for qualifying losses taking place after 1978. See Pub. L. 95-600, sec. 345(b)(2), 92 Stat. 2763, 2845 (1978). See also sec. 1.1244(b)-1(b)(1), Income Tax Regs.↩ This increase does not apply to petitioners' stock. 4. If petitioner is not entitled to an ordinary loss under section 1244, he will be entitled to a capital loss under section 165(g), subject to the limitations attendant upon such losses. 5. A corporation seeking to issue section 1244 stock is also subject to the "gross receipts" test of section 1244(c)(1)(E) whereby an ordinary loss will be denied if more than 50 percent of the corporation's gross receipts consist of certain types of passive income including net gains from the sale or exchange of stock or securities. While Scotch whiskey investment receipts have been classified as securities by the SEC, the "gross receipts" issue is not relevant to our decision, since respondent has not raised the issue and SGIL never had gross receipts exceeding deductions so as to make the test operative. 6. The section 1244 regulations were amended by T.D. 7779, 1981-1 C.B. 440↩ (June 1, 1981). The amendments are reflective of amendments made to the statute by the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, which repealed the requirement that the stock be issued pursuant to a plan for stock issued after November 6, 1978. 7. Section 1.1244(e)-1, Income Tax Regs.
(a) By the corporation. -- (1) Mandatory records. A plan to issue pre-November 1978 stock must appear upon the records of the corporation. Any designation of post-November 1978 stock under paragraph (c)(2) of § 1.1244(c)-2 also must appear upon the records of the corporation. (2) Discretionary records. In order to substantiate an ordinary loss deduction claimed by its shareholders, the corporation should maintain records showing the following: (i) The persons to whom stock was issued, the date of issuance to these persons, and a description of the amount and type of consideration received from each; (ii) If the consideration received is property, the basis in the hands of the shareholder and the fair market value of the property when received by the corporation; (iii) The amount of money and the basis in the hands of the corporation of other property received for its stock, as a contribution to capital, and as paid-in surplus; (iv) Financial statements of the corporation, such as its income tax returns, that identify the source of the gross receipts of the corporation for the period consisting of the five most recent taxable years of the corporation, or, if the corporation has not been in existence for 5 taxable years, for the period of the corporation's existence; (v) Information relating to any tax-free stock dividend made with respect to section 1244 stock and any reorganization in which stock is transferred by the corporation in exchange for section 1244 stock; and (vi) With respect to pre-November 1978 stock: (A) Which certificates represent stock issued under the plan; (B) The amount of money and the basis in the hands of the corporation of other property received after June 30, 1958, and before the adoption of the plan, for its stock, as a contribution to capital, and as paid-in surplus; and (C) The equity capital of the corporation on the date of adoption of the plan.
(b) By the taxpayer. -- Any person who claims a deduction for an ordinary loss on stock under section 1244 shall file with his income tax return for the year in which a deduction for the loss is claimed a statement setting forth: (1) The address of the corporation that issued the stock; (2) The manner in which the stock was acquired by such person and the nature and amount of the consideration paid; and (3) If the stock was acquired in a nontaxable transaction in exchange for property other than money -- the type of property, its fair market value on the date of transfer to the corporation, and its adjusted basis on such date. In addition, a person who owns section 1244↩ stock in a corporation shall maintain records sufficient to distinguish such stock from any other stock he may own in the corporation. 8. The organization of the Delaware corporation, in and of itself, does not disqualify petitioners' stock from section 1244 treatment. This corporation presents itself as a new corporation in name only, using the same set of books, the same operating bank account, and having the same shareholders (with the exception of Johnson) as the D.C. corporation. While sec. 1244(c)(1)(D) (requiring that section 1244 stock be issued for money or other property other than stock or securities) prevents conversion of nonsection 1244 stock to section 1244 stock via a corporate reorganization, the statute creates an exception for a stock-for-stock exchange which qualifies as a 368(a)(1)(F) reorganization. Sec. 1244(d)(2)↩. Sec. 368(a)(1)(F) itself includes a "mere change in * * * place of organization" as a reorganization. 9. But see Eger v. Commissioner,393 F.2d 243 (2d Cir. 1968), revg. T.C. Memo. 1966-192, wherein it was held that the corporate minutes were a sufficient writing to meet the requirements of section 1244. However, the Court noted that regulations had not been adopted at the time the stock was issued, and the Court would not charge the taxpayers with knowledge of their provisions. 10. See also Malawer v. Commissioner,T.C. Memo. 1975-351↩.