T.C. Memo. 1996-324

UNITED STATES TAX COURT

ALFRED C. HESTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3134-94.                    Filed July 16, 1996.

Alfred C. Heston, pro se.

<u>Christal W. Hillstead</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]  Respondent determined a deficiency in petitioner's 1991

---

[1]  Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable year in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Federal income tax in the amount of $6,287.

After petitioner's concessions[2], the sole issue for decision is whether petitioner is entitled to deduct an ordinary loss in the amount of $18,750 as a result of his investment in Geotech Energy Corporation.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioner resided in Spokane, Washington, on the date the petition was filed in this case. Petitioner was married during the year in issue and filed a 1991 joint Federal income tax return with his wife. A statutory notice of deficiency was mailed to petitioner and his wife. However, only petitioner Alfred C. Heston has filed a petition with this Court.

According to his testimony in November 1987, petitioner invested $18,750 in Geotech Energy Corporation (hereinafter Geotech) to purchase a 1/4 percent overriding royalty interest in the Rio Blanco County, Colorado oil, gas, and other mineral lease that had been procured by Geotech (hereinafter Rio Blanco lease). Petitioner testified that Geotech obtained oil leases and sold overriding royalty interests in those oil leases to individual

---

[2] In her notice of deficiency, respondent determined that petitioner's employee business expenses should be disallowed to the extent of $1,775 and a $10,000 long-term capital loss should be recharacterized as a nonbusiness bad debt, and therefore deducted as a short-term capital loss. Petitioner concedes these issues.

investors. Geotech decided not to drill on the Rio Blanco lease after a seismographic test on an adjacent lease provided negative results.

In June 1989, after the decision by Geotech not to drill on the Rio Blanco lease, petitioner testified that he corresponded with Geotech regarding said decision and requested: (1) A return of his investment with interest; (2) a corresponding interest in a similar project; or (3) stock in Geotech. Petitioner testified that as a result of his request, he was made a general manager of an entity petitioner referred to as Royalty Partners (Royalty). Petitioner further testified that he received a few small dividend checks from Royalty before it went out of business. Other than his own testimony, petitioner submitted no evidence that he received any interest in Royalty.

Petitioner testified that after Royalty went out of business, he had a conversation with a representative from Geotech who promised petitioner stock in Geotech. Petitioner never received the Geotech stock. Petitioner testified that Geotech went out of business in 1991.

On his 1991 joint Federal income tax return, petitioner claimed an $18,750 ordinary loss and attached Form 4797, Sales of Business Property, which reflected said loss. The $18,750 ordinary loss was the result of petitioner's investment in Geotech.

The issue for decision is whether petitioner is entitled to an ordinary loss as a result of his investment in Geotech.

Petitioner presents three arguments in support of his claim that he is entitled to an $18,750 loss resulting from his purchase of a 1/4 percent overriding royalty interest in any oil or gas produced on the Rio Blanco lease.

(1)  Section 1244 stock

Petitioner alleges that, after Geotech decided not to drill on the Rio Blanco lease, he asked Geotech for a transfer of his interest to another lease, or his money back.  He testified that Geotech then made him a general partner in Royalty Partners.  He further alleges that Royalty Partners successfully drilled a well, and that he received three "dividend" checks from Royalty Partners but that a problem developed with the wells and he received no more money from the operation.

Petitioner next informs us that he asked Geotech to issue to him founder's stock in Geotech but that he never received any shares in Geotech.  In his Trial Memorandum, petitioner states:

> When I asked for stock in the corporation I asked for
> founder's (1244) stock.  I do not have the stock, but
> it was promised to me by oral agreement.  * * *
> Geotech met all of the qualifications of a small
> business corporation.  I believe that the substance, if
> not the form of this agreement justifies my deduction
> as a 1244 stock loss.

(2)  Passive activity loss under section 469-1T, Income Tax Regs., 53 Fed. Reg. 5700 (Feb. 25, 1988)

Again, in his Trial Memorandum, petitioner states:

there is an exclusion from passive activity limitations for oil and gas explorations. If the General Partner, even though he does not engage in management of the day to day business of the partnership, assumes the liabilities of the operation he is entitled to deduct the intangible drilling costs against ordinary and non-passive income. I have a copy of the filling (sic) with the SEC naming me General Partner in Royalty Partners and other correspondence made from me as general partner to the limited partners. I also have check vouchers for the money I received. I received $45.57 in income from Royalty partners and should be entitled to deduct $18,704.43 against ordinary income under this regulation ($18,750 - $45.57).

(3) A loss under section 165-2(c), Income Tax Regs.

Finally, in his Trial Memorandum, petitioner states:

losses of a lessee from abandonment of worthless leases are deductible. In A. Finston 15 TCM 1048 the judgement (sic) allowed deduction of worthless royalty interests in the sense that it was improbable that the royalty area would ever produce oil and gas in commercial quantities. I have the document where Geotech abandoned the lease on the Rio Blanco property. My loss of $18,750 in this instance should be deductible against ordinary income under this regulation.

Respondent contends that petitioner is not entitled to an $18,750 ordinary loss on small business stock pursuant to section 1244. Respondent did, however, allow petitioner "a short-term capital loss of $18,750 incurred from a deductible non-business bad debt for the taxable year 1991."[3]

We begin by noting that petitioner has the burden of proving that respondent's determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). We further observe that the

---

[3] We make no comment as to the propriety of allowing the $18,750 as a nonbusiness bad debt.

Court is not bound to accept the unverified, undocumented testimony of petitioner. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). More is required by the Court than petitioner's unsubstantiated, unverified, undocumented testimony. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964).

In general, section 165(g) provides that if any security (including stock) that is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.

The allowable amount of the loss is the adjusted basis of the security provided in section 1011 for purposes of determining the loss from the sale or other disposition of property. Sec. 165(b). Furthermore, losses from the sale or exchange of a capital asset shall be allowed only to the extent allowed in sections 1211 and 1212. Pursuant to sections 1211 and 1212, losses in excess of gains from the sale or exchange of capital assets shall be allowed only to the extent of $3,000 per year ($1,500 per year in the case of a married individual filing a separate return) with any excess capital loss being carried forward to subsequent tax years. Secs. 1211, 1212.

Section 1244(a), however, allows an individual taxpayer to treat a loss on "section 1244 stock" as an ordinary loss where it would otherwise be treated as a loss from the sale or exchange of

a capital asset.  The aggregate amount of the loss that may be treated as an ordinary loss pursuant to section 1244 cannot exceed $100,000 (in the case of a husband and wife filing a joint return).  Sec. 1244(b).  The term "section 1244 stock" is defined to mean stock of a domestic corporation where: (1) At the time of the stock's issuance, the corporation had not received money or other property in excess of $1 million for its stock, as a contribution to capital, or as paid-in surplus; (2) the stock was issued for money or other property (other than stock or securities); and (3) the corporation during its most recent 5 taxable years (or, if less, the period during which the corporation has been in existence) derived more than 50 percent of its aggregate gross income from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stocks or securities.  The third test, however, does not apply where the amount of deductions allowed exceeds the amount of the corporation's gross income.  Sec. 1244(c).  The Commissioner is authorized to prescribe the regulations necessary to carry out the purposes of section 1244.  Sec. 1244(e).  Pursuant to that authority, the Commissioner has issued regulations requiring a taxpayer to have records sufficient to establish that the taxpayer is entitled to the loss claimed and satisfies the requirements of section 1244.[4]  Sec. 1.1244(e)-1(b), Income Tax

_____

[4]     The Commissioner's regulations previously required
                                               (continued...)

Regs.  We have held that strict compliance with the requirements of section 1244 and the regulations issued pursuant to it is necessary to obtain the benefits of the section.  Mogab v. Commissioner, 70 T.C. 208, 212 (1978); Morgan v. Commissioner, 46 T.C. 878, 889 (1966); Gubbini v. Commissioner, T.C. Memo. 1996-221.

Petitioner testified that he was orally promised stock in Geotech as a result of the failures of the Rio Blanco lease and Royalty.  However, petitioner never received stock in Geotech. In order to be entitled to the more favorable ordinary loss treatment under section 1244, petitioner must first prove he had an investment in stock, and secondly, that the small business stock requirements pursuant to section 1244 have been satisfied.

---

⁴(...continued)
taxpayers claiming a loss pursuant to sec. 1244 to attach an information report to the return in which the loss was claimed showing the address of the corporation issuing the stock, the manner in which the stock was acquired, the nature and amount of the consideration paid, and, if the stock was acquired in a nontaxable transaction in exchange for property other than money, the type of property transferred, its fair market value on the date of transfer to the corporation, and its adjusted basis on that date.  Sec. 1.1244(e)-1(b)(1), (2), and (3), Income Tax Regs., amended by T.D. 8594, 1995-1 C.B. 146.  Petitioners did not file such an information report with their 1991 Federal income tax return.  However, in 1995, the Commissioner eliminated the requirement of an information report, amending the regulation to require only that taxpayers maintain adequate records to establish their entitlement to claim a loss pursuant to that section.  T.D. 8594, 1995-1 C.B. at 147; see also Notice 94-89, 1994-2 C.B. 560.  The amendment is effective for all open taxable years beginning after December 31,, 1953.  T.D. 8594, 1995-1 C.B at 147.  Consequently, petitioner's failure to file an information report is not fatal to his claim of entitlement to a loss pursuant to sec. 1244.

It is unclear from the record that petitioner's $18,750 investment constituted an investment in stock. Furthermore, there is no evidence in the record, other than petitioner's unconvincing and self-serving testimony, that if his investment in Geotech was in stock, that said stock satisfied any of the requirements of section 1244. Sec. 1244(c). Petitioner's testimony was that his initial investment was in an overriding royalty in the oil to be produced from the Rio Blanco lease, and that it was not until the failure of both the Rio Blanco lease and Royalty that petitioner even requested Geotech stock, which he never received.

We find that petitioner has failed to prove that he satisfies the requirements necessary to entitle him to ordinary loss treatment pursuant to section 1244 on the loss of his investment. Rule 142(a).

Petitioner alternatively contends that he should be entitled to an ordinary loss because his investment in Royalty was excluded from the passive loss rules under section 469.

The passive loss rules of section 469 place limitations on the deduction of losses related to passive activities; namely, from business activities in which a taxpayer does not materially participate. Sec. 469(a). However, a working interest in oil and gas properties is treated as per se nonpassive provided that the taxpayer's form of ownership does not limit his liability. Sec. 469(c)(3)(A).

Petitioner contends that his alleged interest in Royalty constituted an interest that was excepted from the passive activity rules under section 469(c)(3)(A). However, there is no evidence in the record that petitioner had an interest in Royalty. Since we find that petitioner presented no evidence of an interest in Royalty, we need not consider whether or not such investment was excepted from the passive activity loss rules of section 469.

Finally, petitioner contends that he is entitled to an ordinary loss as a result of the abandonment of a worthless lease.

Section 165(c)(1) allows for the deduction of a loss incurred in a trade or business or in a transaction undertaken for profit. A loss may arise from a permanent withdrawal of property used in a trade or business or for the production of income. Sec. 1.165-2(c), Income Tax Regs.

In order to be entitled to an abandonment loss, a taxpayer must show: (1) An intention on the part of the owner to abandon the asset, and (2) an affirmative act of abandonment. Citron v. Commissioner, 97 T.C. 200, 208-209 (1991).

In determining a taxpayer's intent to abandon, the subjective judgment of the taxpayer is entitled to great weight, and the court is not justified in substituting its business judgment for that of the taxpayer. Id. at 209 (citing A.J. Indus. Inc. v. United States, 503 F.2d 660, 670 (9th Cir. 1974)).

Whether an affirmative act to abandon has taken place is determined from all the facts and surrounding circumstances. United Calif. Bank v. Commissioner, 41 T.C. 437, 451 (1964), affd. per curiam 340 F.2d 320 (9th Cir.1965).

In this case, the record is not clear as to when or even if Geotech abandoned its investment. From the record, it appears that Geotech may have abandoned its investment in 1989 when petitioner demanded a return of his investment, a similar investment or stock in Geotech. If this is the situation, petitioner should have taken a deduction, if any was allowable, in 1989, not in 1991. Based on the record in this case, we hold that petitioner has not proved he is entitled in 1991 to a deduction resulting from an abandonment of the Rio Blanco lease.

Accordingly, we hold that petitioner is not entitled to an ordinary loss in the amount of $18,750, in connection with his investment in Geotech.

To reflect the foregoing and concessions,

Decision will be entered

for respondent.